Rebecca Peterson-Fisher (SBN 255359)
Jennifer Liu (SBN 279370)
C. Leah Kennedy (SBN 346306)
KATZ BANKS KUMIN LLP
150 California Street, 16th Floor
San Francisco, CA 94111
Tel: 415.813.3260
Fax: 415.813.2495
Email: Peterson-Fisher@katzbanks.com
Liu@katzbanks.com
Kennedy@katzbanks.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STEVEN MILLER, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>RED ROBIN INTERNATIONAL, INC. dba RED ROBIN BURGER AND SPIRITS EMPORIUMS, and DOES 1-100, inclusive,<br><br>        Defendants. | Case No. 22-CV-02574-JCS<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Before the Hon. Joseph C. Spero<br><br>Hearing: December 22, 2023<br>Location: Courtroom F, 15th Floor<br>Filed: April 27, 2022 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................1

II. OVERVIEW OF INVESTIGATION AND LITIGATION........................2

   A. Discovery and Investigation ...............................................3

   B. Proposed First Amended Complaint Class Definition....................4

   C. Settlement Negotiations...................................................5

III. SUMMARY OF SETTLEMENT TERMS ............................................5

   A. Definition of Settlement Class and Explanation for Differences Between Settlement Class and Class Proposed in Complaint ........5

   B. Settlement Fund ............................................................6

      1. Comparison of Gross Settlement Amount to Maximum Theoretical Recovery........................................7

   C. Allocation Formula.........................................................7

   D. Tax Characterization.......................................................7

   E. Scope of Release and Relationship to Complaint.......................8

   F. PAGA Allocation...........................................................8

   G. Attorneys' Fees and Litigation Costs; Class Representative Service Awards ......................................................................8

   H. Settlement Claims Administrator ........................................9

   I. Settlement Approval and Administration Schedule ....................10

IV. ARGUMENT....................................................................................10

   A. Certification of the Settlement Class Is Appropriate ...................10

      1. Numerosity ..........................................................10

      2. Commonality .......................................................10

      3. Typicality...........................................................11

      4. Adequate Representation .........................................11

      5. Predominance of Common Questions .............................12

      6. Superiority .........................................................13

i

B.    The Settlement Meets the Requirements for Preliminary Approval .............14

     1.    The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations ........................................................................15

     2.    The Settlement Has No Obvious Deficiencies ...................................15

     3.    The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segements of the Class .........15

     4.    The Settlement Falls Within the Range of Possible Approval ..........16

C.    Class Recovery Compared with Maximum Theoretical Recovery and Explanation of Discounts.......................................................................16

D.    The Settlement Meets the Requirements for Final Approval .......................18

     1.    The Strength of the Plaintiff's Case ...................................................18

     2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation...............................................................................21

     3.    The Risk of Maintaining Class Action Status Through Trial .............21

     4.    The Amount Offered in Settlement and Comparable Cases...............21

     5.    The Extent of Discovery Completed and Stage of the Proceedings........................................................................................23

     6.    The Experience and Views of Counsel; Comparable Outcomes........23

     7.    The Presence of a Governmental Participant.....................................24

     8.    The Reaction of Class Members to the Proposed Settlement.............24

E.    The Proposed Notice and Settlement Procedure Are Appropriate. ..............24

V.    CONCLUSION.......................................................................................................25

ii

MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY
APPROVING CLASS SETTLEMENT; MPA;  CASE NO. 22-CV-02574-JCS

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

*A. B. v. Hawaii State Department of Education*
   30 F.4th 828 (9th Cir. 2022) ................................................................................... 10

*Amaral v. Cintas Corp. No. 2*
   163 Cal.App.4th 1157 (2008) .................................................................................. 18

*Amchem Prod., Inc. v. Windsor*
   521 U.S. 591 (1997) ................................................................................................ 14

*Bellinghausen v. Tractor Supply Co.*
   306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................ 16

*Castillo v. Bank of America, NA*
   980 F.3d 723 (9th Cir. 2020) ........................................................................... 10, 12

*Chu v. Wells Fargo Invs., LLC*
   No. C-05-4526-MHP, 2011 WL 6726451 (N.D. Cal. Feb. 16, 2011)...................... 23

*Churchill Vill., L.L.C. v. Gen. Elec.*
   361 F.3d 566, 575 (9th Cir. 2004) ..................................................................... 18, 24

*Cotter v. Lyft, Inc.*
   193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016);, 163 Cal.App.4th 1157 (2008); ...... 22

*Crawford v. Honig*
   37 F.3d 485 (9th Cir. 1994), as amended on denial of reh'g (Jan. 6, 1995)............. 11

*Cruz v. Dollar Tree Stores, Inc.*
   No. 07-2050 SC, 2009 WL 1458032 (N.D. Cal. May 26, 2009), modified in part, 270
   F.R.D. 499 (N.D. Cal. 2010) .................................................................................... 13

*Cruz v. Sky Chefs, Inc.*
   No. C-12-02705 DMR, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) .................... 22

*Damassia v. Duane Reade, Inc.*
   250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................ 13

*De Leon v. Ricoh USA, Inc.*
   No. 18-CV-03725-JSC, 2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) .................. 14

*Deaver v. Compass Bank*
   No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .................. 16

*Duran v. U.S. Bank Nat'l Assn.*
   59 Cal. 4th 1, 26 (2014) .......................................................................................... 12

*Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20,
   2016) ....................................................................................................................... 22

Fed. R. Civ. P. 23 ........................................................................................ 10, 11, 14

*Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419 (N.D. Cal. 2011)............................... 10, 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).............................. 11, 12, 18

*Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795 (2013) ........................................... 20

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)................. 12

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................... 13, 22

*In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009)............. 12

*Jacob v. Pride Transp., Inc.*, No. 16-CV-06781-BLF, 2018 WL 1411136, (N.D. Cal. Mar.
   21, 2018) ................................................................................................................. 11

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 ............................................. 14

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998). ......................... 18, 23

*Lusby v. Gamestop Inc.*, 297 F.R.D. 400 (N.D. Cal. 2013) (approving PAGA allocation of
   0.67% of $750,000 settlement);.............................................................................. 23

*Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942 (9th Cir. 2011) ........................... 19, 21

28

iii

*Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362 (2014), as modified on
  denial of reh'g (Dec. 3, 2014) .................................................................................... 13
*Martino v. Ecolab, Inc.*, No. 14-CV-04358-PSG, 2016 WL 614477 (N.D. Cal. Feb. 16,
  2016)............................................................................................................................ 13
*Mies v. Sephora, U.S.A.*, 234 Cal. App. 4th 967 (2015) ............................................... 19
*Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4,
  2015), aff'd, 728 F. App'x 671 (9th Cir. 2018)........................................................... 22
*Mullane v. Cent. Hanover Bank & Trust Co.*
  (1950) 339 U.S. 306, 314 ........................................................................................... 24
*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal.
  2004)............................................................................................................................ 14
*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014)........................ 14, 15, 16
*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th
  Cir. 1982)............................................................................................................... 16, 18
*Patel v. Nike Retail Servs., Inc.*, No. 14-CV-04781-RS, 2016 WL 1241777 (N.D. Cal. Mar.
  29, 2016) ..................................................................................................................... 19
*Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (EX), 2016 WL 4238635 (C.D.
  Cal. Aug. 10, 2016) ..................................................................................................... 13
*Posephny v. AMN Healthcare Inc.*, 2020 WL 13612298 (N.D. Cal., July 9, 2020, No. 18-
  CV-06284-KAW) ................................................................................................... 17, 22
*Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13,
  2007)............................................................................................................................ 15
*Sav-On Drug Stores, Inc. v. Superior Ct.*, 34 Cal. 4th 319 (2004) ................................12
*Smith v. Lux Retail North America*
  2013 WL 2932243 (N.D. Cal. June 13, 2013)............................................................. 17
*Smith v. Red Robin International*
  No. 14CV01432 JAH-BGS, 2017 WL 1198907 (S.D. Cal., Mar. 31, 2017) .................... passim
*State of California v. eBay, Inc.*
  No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014).............................. 14
*Tijero v. Aaron Bros., Inc.*
  301 F.R.D. 314 (N.D. Cal. 2013) ......................................................................... 11, 12
*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016) .................................................................................................... 12
*Valentino v. Carter-Wallace, Inc.*
  97 F.3d 1227 (9th Cir. 1996) ...................................................................................... 13
*Vazquez v. Coast Valley Roofing, Inc.*
  670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...................................................................... 16
*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) ............................................................................... 9, 15
*Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*
  No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) .......................... 13

**Statutes**
Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................................ 1, 3
Cal. Civ. Code § 1542 ........................................................................................................ 7
Cal. Code Civ. Proc. § 382 ......................................................................................... 10, 11
Cal. Code Civ. Proc. § 384 ................................................................................................. 6
Cal. Lab. Code §§ 201-203 .............................................................................................. 1, 2
Cal. Lab. Code § 218.5 .................................................................................................... 1, 2
Cal. Lab. Code § 226 ....................................................................................................... 1, 3
Cal. Lab. Code § 226.7 .................................................................................................... 1, 2
Cal. Lab. Code § 510 ....................................................................................................... 1, 2
Cal. Lab. Code § 512 ....................................................................................................... 1, 2
Cal. Lab. Code § 1174.5 .................................................................................................. 1, 3
Cal. Lab. Code § 1175 ..................................................................................................... 1, 3

iv

Cal. Lab. Code § 1194 ................................................................................................ 1, 2
Cal. Lab. Code § 1198 ................................................................................................ 1, 2
Cal. Lab. Code § 2698 .................................................................................................... 1
Cal. Lab. Code § 2699(a)(3) ........................................................................................... 18

**Rules**
California Rule of Court 3.766(e) ................................................................................... 22
California Rule of Court 3.769(d) ................................................................................... 10
Fed. R. Civ. Proc. 23 .......................................................................................... passim

**Regulations**
IWC Wage Order No. 7-2001 ...................................................................................... 1, 2

**Page**

v

MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY
APPROVING CLASS SETTLEMENT; MPA;  CASE NO. 22-CV-02574-JCS

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on January 5, 2024 at 9:30 a.m., or as soon thereafter as the

4

matter may be heard, in Courtroom D of the above-entitled Court, Plaintiff STEVEN MILLER, on

5

behalf of himself and others similarly situated ("Class Members") will and hereby does move this

6

Court for an order provisionally certifying the settlement class and preliminary approval of the class

7

and PAGA settlement.

8

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points

9

and Authorities, the Declaration of Rebecca Peterson-Fisher in Support of Motion for Order

10

Provisionally Certifying Settlement Class and Preliminarily Approving Class and PAGA Settlement

11

filed herewith, and oral argument on the motion.

12

**MEMORANDUM OF POINTS AND AUTHORITIES**

13

**I.   INTRODUCTION**

14

Plaintiff Steven Miller seeks preliminary approval of a $3,200,000 class action and Private

15

Attorneys General Act ("PAGA") representative action settlement on behalf Assistant Managers,

16

Kitchen Managers, and Assistant General Managers ("Salaried Managers" or "SMs") who worked

17

at Red Robin restaurants in California, whom Plaintiff alleges were misclassified as exempt

18

employees.  Red Robin is a national chain of burger restaurants which operates over 50 restaurants

19

in California.  Decl. of Rebecca Peterson-Fisher in Support of Motion for Order Provisionally

20

Certifying Settlement Class and Preliminarily Approving Class and PAGA Settlement ("Peterson-

21

Fisher Decl.") ¶ 21.   The proposed settlement includes a class of 205 SMs who did not sign

22

arbitration agreements, 110 of whom are included in the PAGA settlement, and 47 SMs who signed

23

arbitration agreements but who are included in the PAGA settlement.  *Id.* ¶ 20.

24

Plaintiff alleges that Red Robin misclassified Salaried Managers[1] ("SMs") as exempt and

25

unlawfully denied them overtime pay, meal breaks, and rest breaks in violation of California law.

26

_____

27

[1] Referred to as Secondary Managers in the Complaint, and as Salaried Managers in the proposed
First Amended Complaint.

28

The Complaint alleges six causes of action: (1) Labor Code Sections 510 and 1194 and IWC Wage Order No. 5-2001 (unpaid overtime wages); (2) Labor Code Sections 218.5, 226.7, 512 and 1198, and IWC Wage Order No. 5-2001 (meal and rest periods); (3) Labor Code Sections 201-203 (unpaid earned wages upon discharge); (4) Labor Code Sections 226, 1175, and 1174.5 (wage statements); (5) Business and Professions Code Sections 17200, *et seq.* ("Unfair Competition Law" or "UCL"); and (6) Labor Code Sections 2698, *et seq.* ("Private Attorneys General Act" or "PAGA").  ECF No. 1 (Complaint).  SMs were also regularly required to use their personal vehicles for supply runs and deliveries without reimbursement.  Peterson-Fisher Decl. ¶ 25.  As part of the settlement, Plaintiff has filed concurrently herewith a First Amended Complaint that asserts a seventh cause of action for violations of Labor Code § 2802.  ECF No. 50 (Stipulated First Amended Complaint).  Defendant denies Plaintiff's allegations and contends SMs are correctly classified as exempt under the administrative and/or executive exemptions.

After several months of formal and informal discovery, the parties mediated with Todd A. Smith, a prominent Los Angeles mediator, and agreed to settle the case for $3,200,000.  Peterson-Fisher Decl. ¶ 33, Ex. A (Settlement Agreement).[2]  The proposed settlement represents an excellent result for the class and satisfies all of the criteria for preliminary approval.  Plaintiff now moves under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of the class action settlement and conditional certification of a settlement class, and for approval of the PAGA settlement on behalf of aggrieved employees.  For all of the reasons set forth below, the settlement is fair, reasonable, and adequate.  Class members should be provided notice of the settlement and an opportunity to object or request exclusion, and the Court should set a date for a Final Approval hearing.

## II.   OVERVIEW OF INVESTIGATION AND LITIGATION

Plaintiff Miller filed a PAGA letter with the Labor Workforce Development Agency ("LWDA") on February 7, 2022 on behalf of himself and all aggrieved current and former SMs.

---

[2] All exhibits are to the Peterson-Fisher Declaration unless otherwise specified.

Peterson-Fisher Decl. ¶ 23.  On April 27, 2022, Plaintiff filed the Complaint in this matter.  *Id.* at ¶ 24; ECF No. 1. The Complaint defined the proposed Class as "all current and former Assistant Managers, Assistant General Manager, and Kitchen Managers (collectively 'Secondary Managers') employed by Red Robin in California at any time between April 27, 2018 through the final disposition of this action," and asserted six causes of action.  ECF No. 1 at ¶ 24.  At the initial case management conference on September 9, 2022, the parties agreed to private mediation.  Peterson-Fisher Decl. ¶ 26.  Shortly thereafter, a mediation was scheduled with mediator Todd Smith for May 18, 2023.  *Id.*

### A.    Discovery and Investigation

Between September 2022 and May 2023, Plaintiff conducted both formal and informal discovery.  *Id.*  ¶  27.   Plaintiff served two sets of requests for production and two sets of interrogatories on Defendant, seeking information and documents pertaining to both the merits of his claims and to class certification.  *Id.*  Defendant produced over 5,000 pages of documents, including job descriptions, handbooks, compensation policies, training documents, reference materials, and memoranda.  *Id.*  Through written discovery, Plaintiff obtained critical documents and Defendant's positions on key issues, including Defendant's policies regarding labor budgeting and the impact of its decisions to eliminate the Busser and Expeditor positions in early 2018.  *Id.*

Two rounds of *BelAire-West* notice were sent: the first on an opt-in basis to 10% of the members of the class as originally pled (inclusive of individuals with arbitration agreements, based on Defendant's original class size estimate), and the second on an opt-out basis to another 10% of the class as originally pled.  *Id.* ¶ 28.   Defendant produced detailed payroll data and, if applicable, arbitration agreements, for class members who opted-in in the first round of *BelAire-West* notice or who did not opt-out in the second round of *BelAire-West* notice.  *Id.*  Defendant also produced dates of employment and compensation data for each pay period for every class member, the aggregate number of workweeks for class members without arbitration agreements, and the aggregate number of pay periods for class members with and without arbitration agreements employed during the PAGA period.  *Id.*  Class Counsel conducted in-depth interviews with approximately three dozen

members of the original proposed class, some of whom had arbitration agreements, and obtained seventeen declarations. *Id.* ¶ 29. Because most interviewees worked at multiple Red Robin locations, Plaintiff obtained detailed information regarding the working conditions for SMs at 54 of Defendant's California restaurants. *Id.*, Ex. C (Sample Declarations).

During the discovery period, Class Counsel learned of two class action settlements with overlapping class definitions: *Bautista v. Red Robin International, Inc.*, San Joaquin County Superior Court Case NO. STK-cv-UOE-2018-2270 ("*Bautista*") and *Outlaw v. Red Robin International, Inc.*, Eastern District of New York Case No. 2:18-cv-03457-GRB-LGBD. Peterson-Fisher Decl. ¶ 30. The *Bautista* settlement released wage and hour claims for Kitchen Managers employed by Red Robin in California between February 26, 2014 and February 17, 2019. *Id.* Ex. D. For individuals who held multiple job titles during the *Bautista* class period, the settlement released claims only for workweeks during which they worked as Kitchen Managers. *Id.* Ex. D § I(E). The *Outlaw* settlement released state and federal wage and hour claims for 543 FLSA opt-in plaintiffs nationwide, including some in California, for the period August 2, 2015 to March 31, 2020. *Id.* ¶ 31, Ex. G § 1.7.

### B.  Proposed First Amended Complaint Class Definition

The proposed First Amended Complaint ("FAC") filed herewith defines the Class more narrowly than the original Complaint, based on Class Counsel's consideration of the enforceability of the arbitration agreements signed by numerous members of the original class and the releases of claims by members of the original class who participated in the *Bautista* and *Outlaw* settlements. *Id.* ¶¶ 37-39. The FAC defines the proposed Class as:

> All employees who are currently or have been employed by Defendant in the State of California for workweeks during which those individuals work or worked as Assistant General Managers ("AGMs"), Kitchen Managers ("KMs"), or Assistant Managers ("AMs") (collectively, "Salaried Managers") at any time from April 27, 2018 to September 30, 2023, excluding: (1) any workweeks any Salaried Managers who did not opt out of the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case No. STK-CV-UOE-2018-0002270, Superior Court of the state of California, San Joaquin County ("*Bautista*") worked as KMs during the period between April 27, 2018 and February 17, 2019; and (2) any workweeks any Salaried Managers who consented to join a prior settlement in *Outlaw v. Red Robin International, Inc.*, Case No. 2:18-cv-04357, United States District Court for the Eastern District of New York ("*Outlaw*") worked during the period between April

4

27, 2018 and March 31, 2020; and (3) any Salaried Manager who signed an arbitration agreement with Defendant.

ECF No.50 ¶ 24.

### C.   Settlement Negotiations

On May 22, 2023, the Parties attended a full-day mediation session with Todd Smith, Esq., a well-known mediator with substantial experience in California wage and hour class actions. Peterson-Fisher Decl. ¶ 33.  Although the Parties did not reach a settlement on the day of mediation, the Parties continued to discuss settlement and agreed to accept a mediator's proposal to settle the case on or around June 12, 2022.  *Id.*  Over the following months, the Parties negotiated the remaining terms of settlement, and the Parties executed the proposed Settlement Agreement on October 27, 2023.  *Id.*  At all times, settlement negotiations were conducted vigorously and on an arm's-length basis.  *Id.*  A copy of the fully-executed Settlement Agreement was filed with California's Labor and Workforce Development Agency on November 30, 2023, proof of submission of which is attached to the Peterson-Fisher Declaration.  *Id.* ¶ 34, Ex. K (LWDA submission confirmation).

## III.   SUMMARY OF SETTLEMENT TERMS

The full terms of the Settlement Agreement ("Agreement") are set forth in Exhibit A to the Peterson-Fisher declaration.  The material terms of the Settlement are as follows.

### A.   Definition of Settlement Class and Explanation for Differences Between Settlement Class and Class Proposed in Complaint

The Settlement Class is comprised of all employees who are currently or have been employed by Defendant in the State of California for workweeks during which those individuals work or worked as Assistant General Managers ("AGM"), Kitchen Managers ("KM"), or Assistant Managers ("AM") (collectively, "Salaried Managers") at any time during the Class Period (April 27, 2018 to September 30, 2023), excluding: (1) any workweeks any Salaried Managers who did not opt out of the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case No. STK-CV-UOE-2018-0002270, Superior Court of the state of California, San Joaquin County ("*Bautista*") worked as KMs during the period between April 27, 2018 and February 17, 2019; (2) any workweeks any Salaried Manager who consented to join a prior settlement in *Outlaw v. Red Robin*

5

MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS SETTLEMENT; MPA;  CASE NO. 22-CV-02574-JCS

*International, Inc.*, Case No. 2:18-cv-04357, United States District Court for the Eastern District of New York ("*Outlaw*") worked during the period between April 27, 2018 and March 31, 2020; and (3) any Salaried Manager who signed an arbitration agreement with Defendant. Ex. A § 1(E).

There are two key differences between the Settlement Class and the original proposed Class: (1) the Settlement Class excludes SMs with arbitration agreements, and (2) the Settlement Class excludes workweeks for which claims have already been released pursuant to the *Bautista* and *Outlaw* settlements. With respect to the exclusion of the individuals with arbitration agreements, Defendants produced arbitration agreements pursuant to the *BelAire-West* process. Peterson-Fisher Decl. ¶ 38, Ex. L (Exemplar Arbitration Agreement). Class Counsel analyzed those agreements and concluded that Defendants would likely be successful in excluding individuals with arbitration agreements at the class certification stage. *Id.* ¶ 38. Class Counsel also reviewed the settlement documents in *Bautista* and *Outlaw* and explored the possibility of filing a Rule 60 motion in *Outlaw* with an appellate specialist. *Id.* ¶ 39. Ultimately, Class Counsel concluded that the likelihood of success on such a motion was low, and the delay it would entail was not in the interests of the class. *Id.* For those reasons, Plaintiff agreed to exclude already-released workweeks and SMs with arbitration agreements from the Settlement Class, and defined the proposed Class in the FAC as identical to the Settlement Class. *Id.* ¶¶ 37-39.

**B.    Settlement Fund**

The Settlement Agreement creates a non-reversionary common fund of $3,200,000 to settle claims against Defendant ("Gross Settlement Amount"). *Id.* ¶ 40, Ex. A § 1(Q). The Gross Settlement Amount covers Class Members' settlement awards, Plaintiff's service award, attorneys' fees and costs, the Settlement Claims Administrator's fees and costs, and all amounts to be paid to the LWDA. *Id.* The Gross Settlement Amount does not include the employer's share of payroll taxes, which shall be paid separately from the Gross Settlement Amount by Defendant. *Id.* Neither Class Members nor PAGA Members are required to make a claim or take any action in order to receive their individual settlement share if they do not opt out. If a Class Member does not sign and cash their Settlement Check within 180 days from the date checks are issued ("Acceptance Period"),

the funds will be tendered to the to the California State Controller's Office's Unclaimed Property Division in the name of that Participating Class Member.  *Id.* § 11(A).

> ### 1.    Comparison of Gross Settlement Amount to Maximum Theoretical Recovery

The gross settlement amount represents 10.3% of the maximum theoretical recovery, assessed by Plaintiff as approximately $31 million ($30,987,315).  Peterson-Fisher Decl. ¶ 56. Plaintiff's analysis of the maximum theoretical recovery was based on the assumptions that Class Members worked 15 overtime hours per week and 1 double-time hour per week and had 10 missed rest periods and 30 unreimbursed miles driven per week, that the Court would stack PAGA penalties, and that PAGA penalties were recoverable at the subsequent-violation rate.  *Id.*

### C.    Allocation Formula

Individual Settlement Shares will be determined on a pro rata basis according to the number of workweeks each Class Member worked during the Class Period and each PAGA Member worked during the PAGA period.  *Id.* ¶ 40, Ex. A § 10.  The Settlement Administrator will determine the total number of workweeks worked by each Settlement Class Member and each PAGA Member during the relevant time periods based on information provided by Defendant. *Id.* § 10(A).  Class Members may challenge the number of workweeks used to calculate their Settlement Awards by contacting the Settlement Claims Administrator.  *Id.* § 9(A)(10).  The average settlement award per class member, excluding PAGA payments, is estimated to be $11,105.  Peterson-Fisher Decl. ¶ 20.

### D.    Tax Characterization

For tax purposes, thirty-four percent (34%) of Class Members' Settlement Award will be treated as back wages subject to normal tax withholdings and will be reported to taxing authorities on an IRS Form W-2.  *Id.* ¶ 41, Ex. A § 14. Thirty-three percent (33%) will be treated as alleged interest (to be reported on an IRS Form 1099), and thirty-three percent (33%) as alleged civil and statutory penalties (to be reported on an IRS Form 1099).  *Id.*  Each Individual PAGA Payment shall be allocated entirely as penalties.  *Id.*  This allocation is proper because it approximates the proportion of Class Members' total potential recovery that is due to wages versus penalties and/or

7

interest.  *Id.* ¶ 41.  Defendant will be responsible for all state and federal payroll taxes, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages.  *Id.* Ex. A § 1(Q).

### E.    Scope of Release and Relationship to Complaint

The release of claims includes all claims alleged or which could have been alleged in "Plaintiff's Operative Complaint," defined as the FAC filed concurrently herewith.  *Id.* ¶ 42, Ex. A § 7(A).  The claims in the FAC are identical to those in the original Complaint, with the addition of Labor Code § 2802 claims.  *Id.*  Plaintiff analyzed the potential recovery for class members' Labor Code § 2802 claims (along with the claims alleged in the Complaint), and the Gross Settlement Amount includes the reasonable settlement value of those claims.  *Id.*  The Settlement Agreement does not include a waiver under California Civil Code Section 1542 for Settlement Class Members, however, it includes a mutual general release and Section 1542 waiver for the Named Plaintiff.  Ex. A § 7(D).

### F.    PAGA Allocation

The Settlement Agreement allocates $100,000 to Plaintiff's PAGA claims, which represents approximately 3.1% of the Gross Settlement Amount.  Peterson-Fisher Decl. ¶ 65; Ex. A § 15.  Of this amount, $75,000 will be paid to the LWDA.  *Id.*

### G.    Attorneys' Fees and Litigation Costs; Class Representative Service Awards

At the Fairness Hearing, Class Counsel will apply for up to 25% of the Gross Settlement Amount (up to $800,000) as attorneys' fees.  *Id.*  ¶ 45; Ex. A § 12.  This request is consistent with Class Counsel's retainer with the Named Plaintiff, which provides that Class Counsel may apply for up to 33 1/3% of any class settlement as attorneys' fees.[3]   *Id.*

---

[3] Until September 9, 2023, Plaintiff was represented by Rebecca Peterson-Fisher, Jennifer Liu, and C. Leah Kennedy of Liu Peterson-Fisher LLP.  On September 9, 2023, Ms. Peterson-Fisher, Ms. Liu, and Ms. Kennedy joined the firm Katz Banks Kumin LLP, and Liu Peterson-Fisher LLP ceased practicing law.  Plaintiff consented to the change of counsel.  Plaintiff will seek attorneys' fees payable to Katz Banks Kumin, to be divided between Katz Banks Kumin LLP, and Liu Peterson-Fisher LLP on a pro rata basis based on Class Counsel's work on this matter with both firms.  Peterson-Fisher Decl. ¶ 45.

8

MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS SETTLEMENT; MPA;  CASE NO. 22-CV-02574-JCS

The requested percentage of fees is in line with the Ninth Circuit's 25% benchmark for common fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting the Ninth Circuit's 25% "benchmark" percentage). The lodestar cross-check confirms the reasonableness of the fees Plaintiff's Counsel will request. *Id.* at 1050 (lodestar calculations provide a check on the reasonableness of a percentage award). Class Counsel's lodestar to date is approximately $415,000, and Class Counsel estimates it will increase by about $50,000 by the time of final judgment in this case due to time spent communicating with class members, additional motion practice, and settlement administration monitoring. Peterson-Fisher Decl. ¶ 45, Ex. M. The attorneys' fees requested are anticipated to result in a moderate 1.72 multiplier, which is justified by the excellent result for the Class. *Id.* Additionally, Class Counsel will seek reimbursement from the Gross Settlement Amount of their actual litigation costs and expenses, currently estimated to be $12,000. Id. ¶ 46, Ex. A § 12.

Plaintiff will also move for Court approval of a Service Award of $10,000 to Named Plaintiff Steven Miller in recognition of (1) the services he rendered on behalf of the Class, and (2) the release he is agreeing to in the Settlement, which is broader than those of other Class Members. *Id.* ¶ 47, Ex. A § 13. This enhancement is reasonable in view of the time and effort spent, and the risks undertaken, by the Named Plaintiff. *Id.* Ex. N. (Steven Miller Declaration).

### H.    Settlement Claims Administrator

The Settlement Claims Administrator will be Rust Consulting, Inc. ("Rust"), which Class Counsel selected and Defendant approved. *Id.* ¶ 48. The Settlement Claims Administrator's fees will be paid from the Gross Settlement Amount. Ex. A § 1(Q). A declaration from Rust regarding its qualifications to perform the duties of Settlement Claims Administrator is submitted herewith. *Id.* ¶ 50, Ex. O (Andrew Meyer Declaration). Class Counsel obtained competing quotes from CPT and Simpluris, and concluded Rust offered the best value, with a not-to-exceed quote of $11,500. Peterson-Fisher Decl. ¶ 48. The cost of settlement administration is less than 1% of the gross the settlement amount, and is reasonable in light of the multiple forms of notice to be provided and the number of class members. Class Counsel previously engaged Rust for both rounds of *BelAire-West*

notice in this case, which Rust accomplished competently, and has engaged Rust in other matters. Peterson-Fisher Decl. ¶ 49.   Rust is a well-established class action settlement administrator and has substantial experience administrating wage and hour class action settlements and appropriate security controls. *Id.* ¶¶ 49-50, Exs. O, Q.

### I.   Settlement Approval and Administration Schedule

A detailed schedule of the relevant dates and deadlines specified in the Settlement Agreement is set forth in the Peterson-Fisher Declaration at paragraph 52 and in the Proposed Order filed herewith.   The period to opt-out or object is 45 days.   *Id.*, Ex. A § 1(PP).   Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.,* Defendants will provide notice to the appropriate federal and state officials within ten days of the filing of this motion.   *Id.* ¶ 35.

## IV.   ARGUMENT

### A.   Certification of the Settlement Class Is Appropriate

Plaintiff seeks an order granting preliminary approval of the settlement and authorizing notice to the class pursuant to Rule 23(e)(1)(B)(ii), which requires Plaintiff to demonstrate that certification of a settlement class is "likely."   This action meets the requirements for class certification under Rule 23(a) and 23(b)(3), and certification of a settlement class is thus likely.

#### 1.   Numerosity

The numerosity requirement is satisfied when the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   "While there is no set number that satisfies the requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011).   In this case, numerosity exists because there are 205 people in the Settlement Class. Peterson-Fisher Decl. ¶ 20; *see A. B. v. Hawaii State Department of Education*, 30 F.4th 828, 835-36 (9th Cir. 2022)*.*

#### 2.   Commonality

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class."   The existence of a question of law or fact that "resolves a central issue" is sufficient to establish

10

MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS SETTLEMENT; MPA;  CASE NO. 22-CV-02574-JCS

commonality.  *Castillo v. Bank of America, NA*, 980 F.3d 723, 728 (9th Cir. 2020).  Where it is alleged that all class members were subject to a common, unlawful practice, the requirement is satisfied.  *Jacob v. Pride Transp., Inc.*, No. 16-CV-06781-BLF, 2018 WL 1411136, at *3 (N.D. Cal. Mar. 21, 2018).  Here, whether or not SMs were properly classified as exempt is the central issue common to all class members.  *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 321 (N.D. Cal. 2013).  Other issues common to the class include whether Defendant failed to pay overtime wages for all hours worked, failed to provide meal and rest breaks in accordance with California law, systematically failed to provide accurate and itemized wages statements, and failed to reimburse necessary business expenses.

### 3.    Typicality

Rule 23(a)(3)'s typicality requirement is satisfied if the named Plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Plaintiff Miller alleges he was misclassified as exempt while working for Red Robin restaurants as a Kitchen Manager and as an Assistant General Manager.  Plaintiff Miller spent the substantial majority of his time performing non-managerial tasks that were the same as the duties performed by non-exempt workers and thus did not meet the quantitative test for the administrative exemption or executive exemption.  Peterson-Fisher Decl. ¶ 21.  As a result of his misclassification, he was not provided with meal or rest breaks and he was not paid overtime premium pay for overtime hours.  *Id.*  As such, his claims are reasonably co-extensive with those of other Class Members in the same or similar job titles.

### 4.    Adequate Representation

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The assessment of whether represention is adequate "'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994), as amended on denial of reh'g (Jan. 6, 1995) (quoting *Brown v. Ticor Title Ins. Co.,* 982 F.2d 386, 390 (9th

Cir.1992) (quotation omitted), *cert. denied,* 511 U.S. 117 (1994)).  Lead counsel in this matter have over twenty years of combined experience litigating class actions and have been appointed class counsel in numerous other matters.    Peterson-Fisher Decl. ¶¶ 1-19.    Their experience and qualifications are set forth in detail in the Peterson-Fisher Declaration.  *Id.* Plaintiff's counsel have vigorously represented the class to date, and will continue to adequately represent the class. *Hanlon*, 150 F.3d at 1020 (adequacy requires that counsel will "prosecute the action vigorously on behalf of the class.").  Furthermore, the settlement negotiation in this matter was not collusive, and utilized a neutral mediator.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting that the presence of a neutral mediator is "a factor weighing in favor of a finding of non-collusiveness").  Finally, there is no antagonism or conflict of interest between Miller and the absent class members, who were employed in the same or similar job titles and were subjected to the same unlawful policies and practice stemming from Red Robin's misclassification of SMs as exempt.  Peterson-Fisher Decl. ¶ 22; *see Tijero*, 301 F.R.D. at 322.

### 5.  Predominance of Common Questions

The predominance inquiry focuses on whether "'a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  *Castillo v. Bank of America, NA*, 980 F.3d at 730 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013).  Rule 23(b)'s predominance requirement most often determines whether certification is granted in misclassification cases.  It is satisfied when "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).  Class certification in a misclassification case is appropriate where there are "centralized rules . . . suggest[ing] a uniformity among employees that is susceptible to common proof."  *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958-59 (9th Cir. 2009).  This is so because the uniformity of job duties and the existence of corporate policies that control how those duties are performed render the employer's "realistic expectations" and the actual requirements of the job susceptible to common proof.  *See Duran v. U.S. Bank Nat'l Assn.*, 59 Cal. 4th 1, 26 (2014); *Sav-On Drug Stores,*

*Inc. v. Superior Ct.*, 34 Cal. 4th 319, 336 (2004).  California courts and federal courts have certified numerous classes of employees in misclassification cases to address the exact sort of class-wide liability issues at the heart of this case. [4]

Plaintiff alleges that Red Robin's exercise of centralized control over SMs and implementation of common policies which impact that time SMs spent on nonexempt tasks render the issue on which liability turns, misclassification, subject to common proof.  *See Damassia v. Duane Reade, Inc*., 250 F.R.D. 152, 160 (S.D.N.Y. 2008) ("Where . . . there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt[.]").  Plaintiff's Labor Code, UCL, and PAGA claims are all predicated on Defendant's alleged misclassification of Plaintiff and Class Members as exempt, and therefore raise the same common questions of law and fact.  Because the common question of misclassification is the "central focus" of this action and can be resolved in a single adjudication, the predominance requirement is satisfied.  *See In re Linkedin User Privacy Litigation*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

### 6.   Superiority

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  The alternative to a class action in this case would be for each of the 205 class members to file individual wage and hour lawsuits, even though some may have less than ten thousand dollars in damages.  Such an approach would needlessly

---

[4] *See, e.g. Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (EX), 2016 WL 4238635 (C.D. Cal. Aug. 10, 2016) (executive exemption misclassification); *Martino v. Ecolab, Inc.*, No. 14-CV-04358-PSG, 2016 WL 614477 (N.D. Cal. Feb. 16, 2016) (outside sales exemption misclassification); *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362 (2014), as modified on denial of reh'g (Dec. 3, 2014) (executive exemption misclassification); *Greko*, 277 F.R.D. (executive exemption misclassification); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 SC, 2009 WL 1458032 (N.D. Cal. May 26, 2009), modified in part, 270 F.R.D. 499 (N.D. Cal. 2010) (executive exemption misclassification); *Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*, No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) (executive exemption misclassification).

consume judicial resources when Red Robin's centralized control and common policies make it possible adjudicate the misclassification claims together.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (certifying class and noting that individual overtime actions would be expensive and time-consuming).  Moreover, in the wage and hour context, where individual employees' fear of retaliation may deter them from filing their claims, class actions are preferred. *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2019 WL 6311379, at *8 (N.D. Cal. Nov. 25, 2019)

The other factors listed in Rule 23(b)(3) likewise weigh in favor of a finding of superiority. Those factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  There is no evidence of class members' interest in individually controlling separate actions, and no overlapping pending litigation.  Moreover, any class member who wishes to pursue claims individually can opt out of the Settlement.  This district is a desirable forum, because all of the relevant Red Robin locations are in the State of California. Finally, manageability is not a relevant consideration in the settlement context.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### B.   The Settlement Meets the Requirements for Preliminary Approval

Approval of a class action settlement should be granted if the settlement is fair, reasonable, and adequate.  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Preliminary approval should be granted "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (internal quotations omitted); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).  Each of these factors weighs in favor of

preliminary approval here.

### 1. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

The proposed settlement is the result of extensive arms-length negotiations informed by substantial investigation and discovery and careful evaluation of the risks of litigation.  The non-collusive nature of the settlement is supported by the fact that the Parties mediated with Todd Smith, Esq., an experienced wage and hour class action mediator.  *See Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  This factor therefore supports preliminary approval.

### 2. The Settlement Has No Obvious Deficiencies

The proposed settlement has no obvious deficiencies.  Courts typically examine the scope of release, the length of the opt-out and objection period, and the amount sought in attorneys' fees to determine whether obvious deficiencies are present.  Here, the scope of the release is properly limited to only wage and hour claims that were pleaded or could have been pleaded in the proposed First Amended Complaint.  *Nen Thio*, 14 F. Supp. 3d at 1334 (scope of release proper where limited to those based on facts set forth in First Amended Complaint) (citing cases).  The reponse deadline to object or opt-out, 45 days from the mailing of the notice, is consistent with this District's Procedural Guidance for Class Action Settlements requiring a minimum of 35 days. *Nen Thio*, 14 F. Supp. 3d at 1332-33  (approving response deadline of 45 days to submit claim, opt-out, or object). Plaintiff's counsel's request for attorneys' fees of 25% of the common fund is in line with the Ninth Circuit's benchmark for attorneys' fees in class action settlements.  *See Vizcaino*, 290 F.3d at 1047. Further, the settlement is non-reversionary, and all unclaimed funds will be tendered to the to the California State Controller's Office's Unclaimed Property Division in the name of the Participating Class Member to whom the check was payable.  Peterson-Fisher Decl. ¶ 54.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segements of the Class

The proposed settlement does not grant preferential treatment to the Class Representative or to segments of the class.  *Id.* ¶ 55.  The allocation formula provides all Class Members with a pro

rata share of the settlement based on the number of workweeks each of them worked as an SM during the class period.  *Id.*  This formula accounts for the fact that Class Members who worked longer periods of time had more unpaid overtime and missed meal and rest breaks, and ensures the settlement distribution is proportional to the actual value of each Class Member's claim.  *Id.*  The proposed $10,000 service award to the Named Plaintiff is in line with service awards in similar cases, and it is settled law that service awards to named plaintiffs do not render a settlement unfair or unreasonable.  *Nen Thio*, 14 F. Supp. 3d at 1335.  The absence of any preferential treatment to the Named Plaintiff or segments of the Class weighs in favor of preliminary approval.

### 4. The Settlement Falls Within the Range of Possible Approval

The proposed settlement falls within the range of possible approval.  Courts evaluate this criterion by comparing the plaintiffs' expected recovery to the value of the settlement offer.  *Vazquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009).  Even if a cash settlement amounts to only a "fraction of the potential recovery," that does not in itself render the settlement inadequate or unfair. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).  Here, by Plaintiff's estimation, the proposed settlement represents 10.3% of the total theoretical maximum recovery.  Peterson-Fisher Decl. ¶ 56.  This percentage of total recovery is within the range courts in this district have found to be fair and reasonable.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving settlement where common fund was between 27 percent and 11 percent of the total potential recovery); *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving settlement that was 10.7 percent of total potential liability exposure).

### C. Class Recovery Compared with Maximum Theoretical Recovery and Explanation of Discounts

Class Counsel assessed the maximum theoretical recovery at approximately $31, million, disaggregated by claim in chart form in paragraph 56 of the Peterson-Fisher Declaration.  Class Counsel evaluated the settlement offered as reasonable based on the substantial risks of losing on a motion for class certification and on the merits.  Peterson-Fisher Decl. ¶ 57-58.  In 2017, Red Robin defeated a motion for class certification on behalf of a similar class of allegedly misclassified

16

1  "Intermediate Managers" in *Smith v. Red Robin International*, No. 14CV01432 JAH-BGS, 2017

2  WL 1198907 (S.D. Cal., Mar. 31, 2017); Peterson-Fisher Decl. Ex. J.  Since that time, Defendant

3  has eliminated the Busser and Expeditor positions, which strengthens Plaintiff's case, but all of the

4  other challenges to class certification the *Smith* plaintiffs faced remain.  *Id.* ¶ 57.  Further, it is well

5  established that Labor Code exemptions they typically require an individualized, fact-intensive

6  inquiry.  While certain factors and common policies in this case supported class certification –

7  specifically, the elimination of the busser and expeditor positions – Plaintiff faced all of the same

8  barriers to certification that are present in misclassification cases generally.  *Id.*

9         Class Counsel evaluated the probability of losing on the merits as substantial as well. *Id.* ¶

10  58.  Plaintiff would argue that certain tasks Defendant considered managerial, including scheduling

11  employees, assigning them to areas for their shifts, and ordering supplies, were so rote that they

12  should be classified as exempt.  *Id.*  But Defendant would undoubtedly characterize these activities

13  as requiring discretion and independent judgment to evelute the operational needs of the restaurant

14  and the strengths and weaknesses of employees and make decisions accordingly.  *Id.*  Further,

15  though all of Plaintiff's declarants alleged they spent the substantial majority of their time

16  performing the same work as hourly employees, *see generally* Ex. C, Defendant could argue they

17  performed at least some of those tasks for managerial purposes and support their argument with

18  their own declarations.  *Id.* ¶ 58.  In support of the executive exemption, Defendant could

19  successfully argue that SMs customarily and regularly directed the work for two or more employees

20  because they assigned staff to tasks and restaurant stations, counseled them, and issued writeups.

21  *Id.*  Further, Defendant would argue that SMs' recommendations for hiring, firing, and promotion

22  were given "particular weight."  *Id.*

23         Finally, Class Counsel assessed their probability of recovering the full amount of the

24  maximum theoretical PAGA penalties, approximately $7 million, as low.  Peterson-Fisher Decl. ¶

25  59.  It is uncertain whether the Court would find stacking PAGA penalties permissible.  *Posephny*

26  *v. AMN Healthcare Inc., 2020* WL 13612298, at *3 (N.D. Cal., July 9, 2020, No. 18-CV-06284-

27  KAW); *Smith v. Lux Retail North America*, 2013 WL 2932243, *4 (N.D. Cal. June 13, 2013).

28

17

MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY
APPROVING CLASS SETTLEMENT; MPA;  CASE NO. 22-CV-02574-JCS

Moreover, some courts have held that subsequent violation amounts are available only after the employer is on notice of an initial violation.  *E.g.*, *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1209 (2008).  Without stacking, Defendant's PAGA exposure would be only $5.6 million.  Peterson-Fisher Decl. ¶ 59. Without subsequent penalties, Defendant's total PAGA exposure would be only $62,400.  *Id.*  In each scenario, the Court could also exercise its discretion under Labor Code § 2699(e)(2) to further reduce any PAGA awards.

### D.      The Settlement Meets the Requirements for Final Approval

Final approval should be granted where the proposed settlement is fundamentally fair, adequate, and reasonable.  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  Courts bear in mind that settlement is the preferred method of dispute resolution, particularly for complex class actions. *Officers for Justice*, 688 F.2d at 625.  Because the outcome of litigation is always uncertain, the court's determination is necessarily "an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citation omitted).  In the Ninth Circuit, the primary factors considered to evaluate whether a class action settlement should be approved are: (1) the strength of the plaintiff's case;(2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and(8) the reaction of the class members to the proposed settlement. *Id.*; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998) (citation omitted).  No single factor is dispositive, and the relative importance of each factor depends on the nature of the case.  *Officers for Justice*, 688 F.2d at 625.

#### 1.      The Strength of the Plaintiff's Case

Although Class Counsel believe Plaintiff has a strong case, they recognize the risks involved in continuing litigation, including the risks of class certification being denied, losing on the merits of their claims, and proving damages.  Peterson-Fisher Decl. ¶ 60.  While employers have the burden of proving that an exemption applies, the plaintiff in a class action misclassification case must

18

demonstrate that liability can be determined based on common proof.  *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 948 (9th Cir. 2011).  Plaintiff can demonstrate centralized control and common policies with regard to labor budgeting, opening and closing tasks, documentation policies, and food preparation and storage policies.  Peterson-Fisher Decl. ¶ 60.  But the existence of centralized control and uniform policies and procedures "does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." *Id.* (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d at 959).  A class action plaintiff must further demonstrate that those uniform policies and procedures constrained how class members spent their time, such that there is common proof that over 50% of employees' time was spent on nonexempt activities*. Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 427 (N.D. Cal. 2011).  Where there is significant variation between locations with regard to employees' day-to-day activities based on store needs, courts have found that the apportionment of time between exempt and nonexempt tasks depends on individualized inquiry and have denied class certification.  *E.g.*, *Mies v. Sephora, U.S.A.*, 234 Cal. App. 4th 967, 982-84 (2015).  The same is true when employees exercise different levels of discretion depending on particularities of their store environments and general managers. *Patel v. Nike Retail Servs., Inc.*, No. 14-CV-04781-RS, 2016 WL 1241777, at *9 (N.D. Cal. Mar. 29, 2016) (denying class certification where testimony established differing levels of discretionary decision-making across locations depending on Head Coach management styles).  For those reasons, "it is well established [that]….Labor Code exemptions often 'militate against certification' because they typically require an individualized, fact-intensive inquiry." *Id.*  at *7 (citation omitted).

Plaintiff's class members declarations establish that SMs performed common tasks across stores, including filling in for hourly employees due to chronic understaffing.  Peterson-Fisher Decl. ¶ 60.  However, Defendant will argue that individualized inquiries predominate in this case not only because SMs spend different amounts of time on various duties according to store needs, but also because identical tasks can be exempt or nonexempt depending on the purpose for which they are performed.  *Id.*  Thus, Defendant could argue that even as to tasks that are also performed by nonexempt employees, individualized inquiry as to *why* SMs performed those tasks at any given

time will be required.  *Id.*; *Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795, 826 (2013) ("If a task is performed because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department for which [the supervisors] are responsible' (§ 541.108(a), (c)), the work is exempt; if not, it is nonexempt." (citation omitted).  Defendant will undoubtedly contend that not all of its restaurants were understaffed, and that even if they were, the problem of understaffing does not by itself establish what tasks SMs performed or why on any given day. Peterson-Fisher Decl. ¶ 60.  In *Smith v. Red Robin International*, Defendant successfully defeated a motion for class certification, and it is uncertain whether Plaintiff would be able to differentiate this case enough to obtain a different result.  Peterson-Fisher Decl. ¶ 48, Ex. J; *Smith v. Red Robin International*,  2017 WL 1198907.

Plaintiff faced a substantial risk of losing on the merits of his claims for the same reasons. *Id.* ¶ 61.  If Defendant successfully argued that many of the tasks Plaintiff contends constitute nonexempt work in fact required discretion and independent judgment, including scheduling, ordering, and assigning staff during shifts, Plaintiff could end up with no recovery at all for him or the Class.  *Id*.  While Class Counsel believes Plaintiff could have ultimately won on the merits of their claims at trial, they also recognizes the significant risk of losing.  *Id.*  And even if Plaintiff prevailed on the merits, he still faced obstacles to proving the extent of damages.  *Id.*  Due to Defendant's practice of classifying SMs as exempt employees, Defendant never tracked the amount of time Plaintiff and Class Members worked each day, and Plaintiff and Class Members were not required to keep their own records of time they spent working each day.  *Id.*  In order to prove the amount of unpaid overtime owed to Plaintiff and the Class, Plaintiff would likely have needed to rely on survey data and testimonial evidence to establish the extent of damages, and a jury may have refused to place weight on such evidence.  *Id.* The risks to Plaintiff of losing losing class certification, losing on the merits, and/or failing to prove the extent of damages, weigh heavily in favor of preliminary approval.  *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) ("[A] settlement is in the interests of class members who otherwise may not be entitled to any relief should their claims fail on the merits.").

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The proposed settlement confers a substantial benefit on Class Members, while further litigation would create significant risks and cause additional expense and delay. If the Parties continued to litigate the case, they would need to conduct further document discovery, including substantial discovery of electronically-stored information, and take numerous depositions of Defendant's corporate representatives, Class Members, and other fact witnesses. Peterson-Fisher Decl. ¶ 62. Both Parties would likely need to retain experts to opine on liability and/or damages issues. *Id.* If Plaintiff obtained class certification and survived summary judgment, a fact-intensive trial would still be necessary to determine liability and damages. *Id.* A trial would be lengthy and complex and would consume tremendous time and resources for all Parties and the Court. *Id.* Any judgment would likely be appealed, further extending the litigation. *Id.* Given the risk, expense, complexity, and delay that further litigation of this action would entail, preliminary approval is especially appropriate. *See Bayat*, 2015 WL 1744342, at *4.

### 3. The Risk of Maintaining Class Action Status Through Trial

The fact that Plaintiff has not yet obtained class certification in this case weighs in favor of preliminary approval. As set forth in Section IV(B)(1) and IV(D)(1) *supra*, Plaintiff faced numerous obstacles to obtaining class certification on his claims. Even if Plaintiff had obtained certification of the Class on all claims, Defendant could have sought, and the Court could have granted, decertification of the Class in whole or in part at any point up through the trial date. *See generally Marlo*, 639 F.3d 942 (affirming decertification of class); Peterson-Fisher Decl. ¶ 63. Given the substantial risks Plaintiff faced in obtaining and/or maintaining class certification, this factor weighs in favor of granting preliminary approval.

### 4. The Amount Offered in Settlement and Comparable Cases

The $3,200,000 settlement amount is an excellent result given not only the risks described in Section IV(D)(1), *supra*, but in comparison to similar cases, summarized in chart form in paragraph 64 of the Peterson-Fisher Declaration. Peterson-Fisher Decl. ¶ 64. In *Smith v. Red Robin*, Defendant successfully defeated a motion for class certification of a proposed class of "Intermediate Managers"

21

MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS SETTLEMENT; MPA;  CASE NO. 22-CV-02574-JCS

asserting misclassification.  *Id.* Ex. J; *Smith*, 2017 WL 1198907.  The settlement in *Bautista v. Red Robin* provided an average estimated payment of $1,900.80 per class member, and the settlement in *Outlaw v. Red Robin* provided an average estimated payment of $5,433 per class member.  Peterson-Fisher Decl. ¶ 64.  This settlement provides an average per-class-member payment of $11,105, more than double the awards in *Outlaw* and nearly six times the awards in *Bautista.  Id.*

Although Plaintiff's and Class Members' total theoretical maximum recovery is far greater than the $3,200,000 settlement amount, "the tangible, immediate benefits of . . . [s]ettlement outweigh continued litigation and the uncertainty of a trial."  *Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016)  (internal quotation marks omitted)  (citing *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015)  ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."))  Given the risks of continued litigation, which include the risks of class certification being denied and losing on the merits of their claims, the $3,200,000 settlement amount is substantial and falls well within the range of possible approval.

The PAGA allocation of 3.1% is appropriate considering the risks of litigation and the court's discretion to reduce an award of PAGA penalties when it would be unjust, arbitrary, and oppressive, or confiscatory to impose the full amount, and the potential denial of stacking and subsequent violation penalties.  *Posephny,* 2020 WL 13612298, at *3; *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016);, 163 Cal.App.4th 1157, 1209 (2008); Peterson-Fisher Decl. ¶ 65.  Moreover, the allocation of 3.1% of the common fund to PAGA penalties is well within the range of what courts in this District have approved.[5]

Because the total settlement amount compares favorably to comparable cases and the

---

[5] *See, e.g.*, *Cotter*, 2016 WL 3561742, at 1037 (approving settlement with 3.7% of fund allocated to PAGA claims); *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *7, *8–9 (N.D. Cal. Aug. 4, 2015), aff'd, 728 F. App'x 671 (9th Cir. 2018) (approving PAGA allocation equal to 0.5% of $10 million settlement); *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (approving PAGA allocation of 0.57% (footnote continued)

proportion of the settlement allocated to PAGA penalties falls within the range of possible approval, this factor weighs in favor of preliminary approval.

### 5.    The Extent of Discovery Completed and Stage of the Proceedings

Courts examine the extent of discovery completed and the stage of the proceedings with an eye to determining whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  As set forth in detail in Section II(A), the Plaintiff conducted document discovery and interviewed approximately three dozen SMs who worked at 54 different California Red Robin restaurants in depth.  Moreover, this Court ordered Defendant to provide Plaintiff with the data necessary to successfully evaluate this case and reach a resolution at mediation – the total compensation data and dates of employment for the class as needed to project damages.  ECF No. 23 (Dec. 12, 2022 CMC Minute Order).  In addition, the Court granted Plaintiff's request for a second round of *BelAire* notice to ensure Plaintiff had access to a sufficient number of class members to assess the merits of the claims and the likelihood of class certification.  ECF No. 27 (Feb. 13, 2023 CMC Minute Order). Plaintiff had ample information to assess the strength of the claims and the risks of continued litigation, and to build a sophisticated damages model which enabled a reasoned assessment of the fairness of the proposed Settlement.  Peterson-Fisher Decl. ¶ 66.  Accordingly, this factor weighs in favor of preliminary approval.

### 6.    The Experience and Views of Counsel; Comparable Outcomes

The proposed settlement was reached through vigorous arm's-length negotiation between lawyers with significant experience litigating wage and hour class actions.  Based on Class Counsel's experience litigating wage and hour class actions, and their analysis of settlements in other similar cases, Class Counsel believes that the proposed settlement represents an excellent

---

of $1.75 million settlement); *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 407 n. 5 (N.D. Cal. 2013) (approving PAGA allocation of 0.67% of $750,000 settlement); *Chu v. Wells Fargo Invs., LLC*, No. C-05-4526-MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA allocation of 0.14% of $6.9 million settlement).

monetary result for the Class, particularly in light of the risks of denial of class certification continued litigation and the outcomes in the *Smith*, *Outlaw*, and *Bautista* cases.   *Id.* ¶ 67. Accordingly, this factor also supports preliminary approval.

### 7.     The Presence of a Governmental Participant

Here, the proposed settlement did not involve the presence of a governmental participant; therefore, this factor is neutral.  Peterson-Fisher Decl. ¶ 68.

### 8.     The Reaction of Class Members to the Proposed Settlement

Since Class Members have not yet been notified of the settlement, the Court cannot evaluate Class Members' reaction, including the number and substance of objections, or the number of exclusion requests.  However, the Named Plaintiff's signature on the Settlement Agreement is one early indication of Class Members' positive reaction to the proposed settlement.  *Id.* ¶ 69, Ex. A at 35.

Because all of the factors (with the exception of Factor 7, which is neutral) indicate that the settlement is fair, adequate, and reasonable, the Court should grant preliminary approval of the settlement.

### E.     The Proposed Notice and Settlement Procedure Are Appropriate.

Notice of a class action settlement "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted); *see Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  The detailed information in the Proposed Notice provides far more information than this, and fully complies with the requirements of Rule 23(c)(2)(B), as explained in detail in the Peterson-Fisher Declaration.  Peterson-Fisher Decl. ¶¶ 51, 70, Ex. B.

Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances," by "mail, electronic means, or other appropriate means."  The Procedural Guidance requires that the notice rely on U.S. mail, email, and/or social media as appropriate, and that if U.S. Mail is used, the envelope be designed to enhance the change that it will be opened.  Defendant has email addresses

and phone numbers for Class Members, and accordingly notice will be distributed by email and by U.S. Mail.  Ex. A § 9(A).  Additionally, text messages will notify class members that notice has been emailed and mailed to them.  *Id.*  Any returned notices will be skip-traced and remailed.  *Id.* If the Settlement Claims Administrator is unable to locate Class Members whose Notices are returned as undeliverable, Plaintiff's Counsel will also make attempts to locate such Class Members. Peterson-Fisher Decl. ¶ 70.  The Notice will be provided in English only, which is sufficient in this case because the SM position required SMs to speak and read English.  *Id.*

This robust manner of giving notice complies with Rule 23(c)(2) because it has a likelihood of reaching most, if not all, Class Members.  Although greater efforts could conceivably result in a higher likelihood of reaching all Class Members, such efforts (e.g., hiring private investigators) are not warranted here given that such efforts would likely entail significant cost, Class Members' stake in recovery is limited to the claims asserted in the case, and the average monetary award is relatively modest. *Id.* ¶ 71.  Finally, after entry of final judgment, Plaintiff's Counsel shall be responsible for ensuring that the Settlement Claims Administrator posts on the website for this case that final judgment in the case has been entered, so as to notify Class Members of the same.  *Id.*

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Order Provisionally Certifying Settlement Class and Preliminarily Approving Class Settlement.

DATED: December 1, 2023          Respectfully submitted,

KATZ BANKS KUMIN LLP


By: _____
     Rebecca Peterson-Fisher

*Counsel for Plaintiff and the Proposed Class*