Rebecca Peterson-Fisher (SBN 255359)
Jennifer Liu (SBN 279370)
C. Leah Kennedy (SBN 346306)
KATZ BANKS KUMIN LLP
150 California Street, 16th Floor
San Francisco, CA 94111
Tel: 415.813.3260
Fax: 415.813.2495
Email: Peterson-Fisher@katzbanks.com
Liu@katzbanks.com
Kennedy@katzbanks.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| STEVEN MILLER, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>RED ROBIN INTERNATIONAL, INC. dba RED ROBIN BURGER AND SPIRITS EMPORIUMS, and DOES 1-100, inclusive,<br><br>            Defendants. | Case No. 22-CV-02574-JCS<br><br>**AMENDED [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR ORDER PROVISIONALLY CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS AND PAGA SETTLEMENT**<br><br>Before the Hon. Joseph C. Spero<br><br>Date:    January 26, 2024<br>Time:    9:30 a.m.<br>Location: Courtroom D, 15th Floor |

1

2      1.      A hearing regarding this matter came before this Court on January 26, 2024,

3 with Katz Banks Kumin LLP appearing as counsel for Plaintiff Steven Miller, and Jackson

4 Lewis, P.C. appearing as counsel for Defendant Red Robin International, Inc.  Based upon

5 the Court's review of Plaintiffs' Notice of Motion and Motion for Order Provisionally

6 Certifying Settlement Class and Preliminarily Approving Class and PAGA Settlement, the

7 Memorandum of Points and Authorities in Support Thereof, the Declaration of Rebecca

8 Peterson-Fisher ("Peterson-Fisher Declaration") in support thereof and the exhibits

9 attached thereto, the Court makes the following observations and findings and orders as

10 follows.

11                PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

12      2.      The Court finds that the proposed settlement is the product of serious,

13 informed, non-collusive negotiations that occurred with the assistance of an experienced

14 wage and hour mediator, Todd Smith, Esq.; the proposed settlement has no obvious

15 deficiencies; the proposed settlement does not improperly grant preferential treatment to

16 Class Representatives or segments of the Class; and the proposed settlement amount falls

17 within the range of possible approval given the risks of continued litigation.  Accordingly,

18 the Court grants preliminary approval of the class settlement memorialized in the

19 Stipulation Regarding Class Action and PAGA Settlement ("Settlement Agreement"),

20 attached hereto as **Exhibit A**, which has been amended consistent with the Court's

21 instructions at the January 26, 2024 hearing.  This Order incorporates by reference the

22 definitions in the Settlement Agreement, and all terms defined therein shall have the same

23 meaning as set forth in the Settlement Agreement.

24                PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS

25      3.      Plaintiffs and the proposed Class meet all of the requirements for

26 certification of a settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3).

27      4.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because the

28

1

settlement class totals approximately 205 members ("Class Members").

5.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because they and Class Members share numerous common factual and legal issues that go to the core of Plaintiff's claims that Defendant misclassified them and Class Members as exempt. Plaintiff alleges that he and Class Members performed common job duties, and that these common job duties rendered them ineligible for the executive or administrative exemptions under California law.  Other common issues include, but are not limited to, whether Defendant failed to provide meal and rest breaks to Plaintiff and Class Members, whether Defendant issued accurate wage statements to Plaintiff and Class Members, whether Defendant failed to pay waiting time penalties to Plaintiff and Class Members, and whether Defendant failed to reimburse Plaintiff and Class Members for mileage.

6.      Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff alleges that he shared the same job title and performed the same job duties as other Class Members, that Defendant misclassified Plaintiff and other Class Members as exempt from overtime pursuant to the same company policy, and that they suffered the same loss of overtime wages and missed meal and rest breaks as a result of Defendant's conduct. Because Plaintiff alleges that he has suffered the same injuries as other Class Members, and that those injuries arise from the same course of conduct, the proposed Class satisfies the typicality requirement.

7.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because neither the Named Plaintiff nor Plaintiff's Counsel have any conflicts of interest with other Class Members.  Additionally, the Named Plaintiff and Plaintiff's Counsel have vigorously prosecuted the claims on behalf of the Class and will continue to do so.

8.      Plaintiff satisfies the predominance requirement under Federal Rule of Civil Procedure 23(b).  Here, Plaintiff's and Class Members' common factual allegations and common legal theory – that Defendant violated state wage and hour laws by misclassifying them as exempt employees and failing to pay them overtime wages – predominate over

1  any factual or legal variations among Class Members.

2       9.     Plaintiff also satisfies the superiority requirement under Federal Rule of Civil

3  Procedure 23(b), because the cost of litigating each Class Member's claims on an

4  individual basis would be greater than each Class Member's theoretical maximum

5  recovery.  Therefore, a class action is the most suitable mechanism to fairly, adequately,

6  and efficiently resolve Plaintiff's and Class Members' claims.

7       10.    The Court provisionally certifies the following class under Federal Rule of

8  Civil Procedure 23(e), for settlement purposes:

9  > All employees who are currently or have been employed by Defendant in the
10 > State of California for workweeks during which those individuals work or
   > worked as Assistant General Managers ("AGM"), Kitchen Managers
   > ("KM"), or Assistant Managers ("AM") (collectively, "Salaried Managers")
11 > at any time from April 27, 2018 through September 30, 2023, and shall
   > exclude: (1) any workweeks any Salaried Managers who did not opt out of
12 > the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case
   > No. STK-CV-UOE-2018-0002270, Superior Court of the state of California,
13 > San Joaquin County ("*Bautista*") worked as KMs during the period between
   > April 27, 2018 and February 17, 2019; (2) any workweeks any Salaried
14 > Manager who consented to join a prior settlement in *Outlaw v. Red Robin
   > International, Inc.*, Case No. 2:18-cv-04357, United States District Court for
15 > the Eastern District of New York ("*Outlaw*") worked during the period
   > between April 27, 2018 and March 31, 2020; and (3) any Salaried Manager
16 > who signed an arbitration agreement with Defendant.

17 Provisional certification of the settlement class shall be solely for settlement purposes and

18 without prejudice to any party, in the event that the Settlement Agreement is not finally

19 approved.

20      11.    The Court approves the Settlement as to the PAGA representative action.

21 <u>APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL</u>

22      12.    The application of Rebecca Peterson-Fisher, Jennifer Liu, and Leah Kennedy

23 of Katz Banks Kumin LLP to be appointed as Class Counsel is granted because they meet

24 all of the requirements of Federal Rule of Civil Procedure 23(g).  Rule 23(g) sets forth four

25 criteria that this Court must consider in evaluating the adequacy of proposed counsel:

26 (1) "the work counsel has done in identifying or investigating potential claims in the

27 action;" (2) "counsel's experience in handling class actions, other complex litigation, and

28

1  the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;

2  and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P.

3  23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to

4  fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

5        13.    Plaintiff's Counsel meet all of these criteria. Plaintiff's Counsel have done

6  substantial work identifying, investigating, prosecuting, and settling Plaintiff's and Class

7  Members' claims. Additionally, Plaintiff's Counsel have substantial experience

8  prosecuting and settling employment class actions, including wage and hour class actions,

9  and are well-versed in both wage and hour law and class action law. Courts have

10  repeatedly found Plaintiff's Counsel to be adequate class counsel in wage and hour class

11  actions and other class actions. The work that Plaintiff's Counsel has performed both in

12  litigating and settling this case demonstrates their commitment to the class and to

13  representing Class Members' interests.

14  <u>NOTICE AND SETTLEMENT PROCEDURE</u>

15        14.    Attached as **Exhibit B** hereto is the parties' Revised Proposed Notice.

16        15.    The Court finds that the Revised Proposed Notice fully complies with due

17  process and Federal Rule of Civil Procedure 23. The Revised Proposed Notice provides

18  the best notice practicable under the circumstances. It states the nature of the action, the

19  definition of the class certified, and the class claims, issues, and defenses; it advises Class

20  Members of their right to appear at the Fairness Hearing, opt-out, or object, and it informs

21  Class Members of the binding effect of a class judgment. Additionally, the Revised

22  Proposed Notice describes the terms of the settlement, informs the class about the

23  allocation of attorneys' fees, and provides specific information regarding the date, time,

24  and place of the final approval hearing. Further, the Revised Proposed Notice complies

25  with the Northern District of California Procedural Guidance for Class Action Settlements.

26        16.    The Court appoints Rust Consulting, Inc. as the Settlement Administrator

27  and directs it to comply with the terms of the Settlement.

28

17.    The Court therefore approves the Revised Proposed Notice and directs its distribution to Class Members as outlined below.

18.    The Court will hold a Fairness Hearing on _____ at _____, via videoconference at:

https://cand-uscourts.zoomgov.com/j/1619260804?pwd=RE5qWDhGOTdWWTZUOFlOKzhNc3pjZz09

Webinar ID: 161 926 0804

Password: 050855

19.    The Court hereby adopts the following settlement procedure:

| | |
|---|---|
| 10 business days after entry of order granting Preliminary Approval of Settlement | Defendant provides the Class List to the Settlement Claims Administrator (Settlement Agreement § 9(A)) |
| 10 business days after receiving the Class List from Defendant or as soon thereafter as is practicable | Settlement Claims Administrator mails the Class Notice (*Id.*) |
| After receiving notices for Class Members returned as undeliverable within 45 days of initial notice mailing | Settlement Claims Administrator attempts to obtain a current address by contacting the class member by phone if possible, and undertaking skip tracing. If successful in obtaining a new address within 45 days of the initial Notice mailing, Settlement Administrator will promptly re-mail the Class Notice to the Settlement Class Member. Any Class Notices returned to the Settlement Administrator with forwarding addresses within 45 days of the initial Notice mailing shall be promptly re-mailed to the forwarding address. For Class Members to whom notice was returned as undeliverable and re-mailed, the Response Deadline shall be 60 calendar days from the initial Notice mailing. (*Id.*) |
| 10 calendar days after Class Notice is mailed | Deadline for Participating Class Members to dispute workweek data. For Class Members to whom notice was returned as undeliverable and re-mailed, the deadline to dispute workweek data shall be 10 calendar days after re-mailing or 30 calendar days from the initial Notice mailing, whichever is later. |
| 30 calendar days after Class Notice is mailed | Class Counsel to file Motion for Attorney's Fees, Costs, and Service Award; deadline to resolve workweek data disputes submitted by Class Members to whom Notice was not remailed. |
| 45 calendar days after Class Notice is mailed | Response Deadline to opt-out or object. (*Id.* § 1(PP)) for Class Members to whom Notice was not remailed; deadline to resolve workweek data |

| | disputes submitted by Class Members to whom Notice was remailed. |
|---|---|
| 7 calendar days from Response Deadline | Settlement Administrator to provide Parties with a declaration attesting to completion of notice process, number of attempts to obtain valid mailing address and re-sending of returned Class Notices, and the identities, number of, and copies of all Requests for Exclusion and Objections received. (*Id.* § 9(A)) |
| 60 calendar days after Class Notice is mailed | Response Deadline to opt-out or object for Class Members to whom Notice was remailed. |
| 7 calendar days from Response Deadline for remailed Notices | Settlement Administrator to provide Parties with any updates to information regarding Requests for Exclusion and Objections received. |
| 75 calendar days after final approval order (10 calendar days after effective date) | Defendant to pay the Gross Settlement Amount and Employer Taxes to Settlement Administrator (*Id.* § 11(B)) |
| 10 days after funding of settlement | Settlement Administrator to issue payment for service award, attorney's fees and costs, Settlement Administrator costs, payment to the Labor Workforce Development Agency, Individual PAGA payments and Individual Settlement Payments. (*Id.* at § 11(C) |
| 75 days after check issuance | Class Counsel to submit Settlement Administrator's summary accounting of distributions, number and value of uncashed checks to the Court. |
| 180 days after check issuance | Checks no longer valid and negotiable (*Id.* § 11(A)) |
| 14 days after check expiration | Settlement Administrator will cancel checks and cause funds associated with such checks to be tendered to the California State Controller's Unclaimed Property Division in the name of the Participating Class Member to whom the check was payable. (*Id.*) |
| 30 days after check expiration | Class Counsel to submit Settlement Administrator's final accounting to Court. |

20. Not later than thirty (30) calendar days after the date of initial notice mailing, Plaintiff will submit a Motion for Attorney's Fees, Costs, and Service Award.

21. Not later than fifteen (15) calendar days before the Fairness Hearing, Plaintiff will submit a Motion for Final Approval of Class Action Settlement.

22. If the Court grants Plaintiff's Motion for Final Approval of Class Action Settlement, the Court will issue a Final Order and Judgment.

6

23.     If no Party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be the day after the deadline for taking an appeal has passed; if an individual appeals the Court's Final Order and Judgement, the "Effective Date" shall be the 66th day after the Court enters its Final Order and Judgment.

24.     The Parties shall abide by all terms of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: _____, 2024        _____

Hon. Joseph C. Spero
United States Magistrate Judge

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER PROVISIONALLY CERTIFYING
SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS AND PAGA SETTLEMENT
CASE NO. 22-CV-02574 (JCS)

# EXHIBIT A

REBECCA PETERSON-FISHER (State Bar No. 255359)
JENNIFER L. LIU (State Bar No. 279370)
LEAH KENNEDY (State Bar No. 346306)
**KATZ BANKS KUMIN LLP**
150 California St., 16th Floor
San Francisco, CA 94111
Telephone: (415) 813-3260
Facsimile: (415) 813-2495
Email: peterson-fisher@katzbanks.com
Email: liu@katzbanks.com
Email: kennedy@katzbanks.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| STEVEN MILLER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RED ROBIN INTERNATIONAL, INC. dba RED ROBIN BURGER AND SPIRITS EMPORIUMS, and DOES 1-100, inclusive, <br><br> Defendants. | Case No. 22-CV-02574-JCS <br><br> **STIPULATION REGARDING CLASS ACTION AND PAGA SETTLEMENT** <br><br> Before the Hon. Joseph C. Spero |

Adam Y. Siegel (SBN 238568)
Adam.Siegel@jacksonlewis.com
Martin P. Vigodnier (SBN 311834)
Martin.Vigodnier@jacksonlewis.com
**JACKSON LEWIS P.C.**
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendant
RED ROBIN INTERNATIONAL, INC.

This Stipulation Regarding Class Action and Private Attorneys General Act ("PAGA") Settlement and Release (hereinafter the "Settlement" or "Agreement") is made and entered into by and between Plaintiff STEVEN MILLER ("Plaintiff"), on behalf of himself as private attorney general for the State of California on behalf of allegedly aggrieved employees, and on behalf of all others similarly situated, and Defendant RED ROBIN INTERNATIONAL, INC. ("Defendant"). Plaintiff and Defendant shall be, at times, collectively referred to as the "Parties". This Agreement is intended by the Parties to fully, finally, and forever resolve the claims as set forth herein, based upon and subject to the terms and conditions of this Agreement.

THE PARTIES STIPULATE AND AGREE as follows:

1. **<u>DEFINITIONS</u>**

Unless otherwise defined herein, the following terms used in this Agreement shall have the meanings ascribed to them as set forth below:

**A.** **"Action"** means *Steven Miller v. Red Robin International, Inc.*, filed on April 27, 2022 in the United States District Court for the Northern District of California, Case No. 22-CV-02574-JCS.

**B.** **"Agreement"** means this Joint Stipulation of Settlement, including the attached Exhibit(s).

**C.** **"Class Counsel"** means: Rebecca Peterson-Fisher, Jennifer L. Liu, and Leah Kennedy of KATZ BANKS KUMIN LLP. The term "Class Counsel" shall be used synonymously with the term "Plaintiff's Counsel."

**D.** **"Class Data" or "Class List"** means a list based on Defendant's business records that identifies each Class Member's name; last known home or mailing address; Social Security number or, as applicable, other taxpayer identification number; and dates of employment.

**E.** **"Class Member(s)", "Settlement Class", or "Settlement Class Member(s)"** means all employees who are currently or have been employed by Defendant in the State of California for workweeks during which those individuals

work or worked as Assistant General Managers ("AGM"), Kitchen Managers ("KM"), or Assistant Managers ("AM") (collectively, "Salaried Managers") at any time during the Class Period and shall exclude: (1) any workweeks any Salaried Managers who did not opt out of the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case No. STK-CV-UOE-2018-0002270, Superior Court of the state of California, San Joaquin County ("*Bautista*") and worked as KMs during the period between April 27, 2018 and February 17, 2019; (2) any workweeks any Salaried Manager who consented to join a prior settlement in *Outlaw v. Red Robin International, Inc.*, Case No. 2:18-cv-04357, United States District Court for the Eastern District of New York ("*Outlaw*") worked during the period between April 27, 2018 and March 31, 2020; and (3) any Salaried Manager who signed an arbitration agreement with Defendant.

   **F.    "Class Notice"** means and refers to the notice sent to Class Members after preliminary approval of the Settlement in the manner described in Paragraph 9(A) of this Agreement.

   **G.    "Class Period"** means the period from April 27, 2018 through the date the Court preliminarily approves the Settlement Agreement or September 30, 2023, whichever is earlier.

   **H.    "Class Released Claims"** means the claims being released described in Paragraph 7 below.

   **I.    "Court"** means the United States District Court for the Northern District of California.

   **J.    "Defendant"** means Defendant Red Robin International, Inc.

   **K.    "Defense Counsel"** means counsel for Defendant Adam Y. Siegel, Philip J. Smith, and Martin P. Vigodnier of Jackson Lewis P.C.

   **L.    "Disposition"** means the method by which the Court approves the terms of the Settlement and retains jurisdiction over its enforcement, implementation, construction, administration, and interpretation.

**M.    "Effective Date"** means the date when all of the following events have occurred: (1) the Stipulation of Settlement has been executed by all Parties, Class Counsel, and Defendant's Counsel; (2) the Court has given preliminary approval to the Settlement; (3) the Class Notice has been given to the putative members of the Class, providing them with an opportunity to object to the terms of this Settlement or to opt-out of the Settlement; (4) the Court has held a formal fairness hearing and entered a Final Order certifying the Settlement Class, dismissing the Action with prejudice, and approving the Settlement; (5) 65 calendar days have passed since the Court has entered a Final Order certifying the Settlement Class, dismissing the Action with prejudice, and approving the Settlement; and (6) in the event there are written objections filed prior to the final fairness hearing which are not later withdrawn or denied, the later of the following events: seven business days after the period for filing any appeal, writ or other appellate proceeding opposing the Court's Final Order approving the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or, if any appeal, writ or other appellate proceeding opposing the Court's Final Order approving the Settlement has been filed, seven business days after any appeal, writ or other appellate proceedings opposing the Settlement has been finally and conclusively dismissed with no right to pursue further remedies or relief.

**N.    "Employer Taxes"** means employer-funded taxes and contributions imposed on the wage portions of the Individual Settlement Payments under the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, and any similar state and federal taxes and contributions required of employers, such as for unemployment insurance.

**O.    "Final Order Approving Settlement" or "Final Order"** means the final formal court order signed by the Court following the Final Fairness and Approval Hearing in accordance with the terms herein, approving this Agreement.

P. **"General Release"** means the broader release of claims by Plaintiff, which is in addition to Plaintiff's limited release of claims as a Participating Class Member.

Q. **"Gross Settlement Amount"** means an all-in and non-reversionary sum of THREE MILLION, TWO HUNDRED THOUSAND DOLLARS AND 00/100 ($3,200,000.00) inclusive of all amounts to be paid under the Settlement, including the amounts to the Settlement Class, Plaintiff for Service Award, PAGA penalties to the State of California and PAGA Members, attorney fees and costs, and settlement administration expenses. Under no circumstances will Defendant's payment exceed the Gross Settlement Amount, except that Defendant will make additional payments to the Settlement Administrator representing its share of any employer payroll taxes to be paid in connection with the Settlement (*e.g.*, FICA, FUTA, payroll taxes, or any similar tax or charge).

R. **"Individual PAGA Payment(s)"** means a payment made to a PAGA Member for his or her share of the PAGA Payment, which may be in addition to his or her Individual Settlement Share if he or she is also a Participating Class Member.

S. **"Individual Settlement Payment(s)"** means a payment to a Participating Class Member of his or her net share of the Net Settlement Amount.

T. **"Individual Settlement Share"** means the gross amount of the Net Settlement Amount that a Participating Class Member is projected to receive based on the number of Workweeks that he or she worked as a Settlement Class Member during the Class Period, which shall be reflected in his or her Class Notice.

U. **"LWDA"** means the State of California Labor and Workforce Development Agency.

V. **"LWDA Payment"** means the payment to the LWDA for its seventy-five percent (75%) share of the total amount allocated toward penalties under the PAGA all of which is to be paid from the Gross Settlement Amount. The Parties agree that ONE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($100,000.00) shall be

allocated toward PAGA penalties, subject to approval by the Court, of which SEVENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($75,000.00) will be paid to the LWDA and TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($25,000.00) will be paid to PAGA Members on a pro rata basis based on the Workweeks worked by the PAGA Members in the PAGA Period (the "PAGA Payment").

**W.    "Motion for Final Approval"** means Plaintiff's submission of a written motion, including any evidence as may be required for the Court to conduct an inquiry into the fairness of the Settlement as set forth in this Agreement, to conduct a Final Fairness and Approval Hearing, and to enter a Final Order in this Action.

**X.    "Motion for Preliminary Approval"** means Plaintiff's submission of a written motion, including any evidence as may be required for the Court to grant preliminary approval of the Settlement as required by the Federal Rules of Civil Procedure Rule 23 and Local Rules for the Northern District of California as applicable.

**Y.    "Named Plaintiff's Released Claims"** means the claims being released described in Paragraph 7 below.

**Z.    "Net Settlement Amount"** means the portion of the Gross Settlement Amount that is available for distribution to the Participating Class Members after deductions for the Court-approved allocations for Settlement Administration Costs, a Service Award to Plaintiff, an award of attorneys' fees, reimbursement of litigation costs and expenses to Class Counsel, the LWDA Payment and the PAGA Payment.

**AA.   "Non-Participating Class Member(s)"** means any Class Member(s) who submit to the Settlement Administrator a valid and timely written request to be excluded from the Class pursuant to Paragraph 9 below.  Non-Participating Class Member(s) shall still release the PAGA Released Claims and shall receive their pro rata share of the PAGA Settlement Amount, if applicable.

**BB.   "Operative Complaint"** means the First Amended Complaint to be filed with the Court.

**CC. "PAGA"** means the California Private Attorneys General Act of 2004, California Labor Code §§ 2698 *et seq.*

**DD. "PAGA Payment"** is the 25% portion of the ONE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($100,000.00) that is allocated toward PAGA penalties (TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($25,000.00)) that, subject to approval by the Court will be paid to PAGA Members on a pro rata basis based on the Workweeks worked by the PAGA Members in the PAGA Period, which will be in addition to their Individual Settlement Payment if they are also Participating Class Members. Settlement Class Members are not permitted to exclude themselves from receiving their pro rata share of the PAGA Payment.

**EE. "PAGA Member(s)"** means all employees who are currently or have been employed by Defendant in the State of California for workweeks during which those individuals work or worked as Salaried Managers any time during the PAGA Period. PAGA Members shall include employees who signed an arbitration agreement with Defendant.

**FF. "PAGA Member's Workweeks"** means the number of weeks that a PAGA Member was directly employed by and worked for the Defendant as a non-exempt employee during the PAGA Period in California, based on hire dates, re-hire dates (as applicable), and termination dates (as applicable).

**GG. "PAGA Period"** means the period from February 7, 2021 through the date the Court preliminarily approves the Settlement Agreement or September 30, 2023, whichever is earlier.

**HH. "PAGA Released Claims"** means the claims being released as described in Paragraph 7 below.

**II. "PAGA Workweeks"** means the aggregate number of Workweeks worked by all PAGA Members during the PAGA Period.

**JJ. "Participating Class Member(s)"** means all Settlement Class Members who do not submit a timely and valid Request for Exclusion and will therefore receive

his/her/their share of the Net Settlement Amount automatically; i.e., without the need to return a claim form. Each Participating Class Member will be paid his/her/their Participating Individual Settlement Share.  Settlement Class Members may not exclude themselves from releasing the PAGA Released Claims and receiving their pro rata share of the PAGA Payment, if applicable.

**KK.**  **"Participating Individual Settlement Share"** means the gross amount of the Net Settlement Amount that a Participating Class Member is eligible to receive based on the number of Workweeks that they worked as a Settlement Class Member during the Class Period once all opt-outs have been factored in, excluding any Individual PAGA Payment to which they may be entitled if they are also a PAGA Member.

**LL.**  **"Plaintiff", "Named Plaintiff" or "Class Representative"** shall refer to Plaintiff Steven Miller.

**MM.**  **"Preliminary Approval Date"** means the date on which the Court enters an Order granting preliminary approval of the Settlement embodied in this Agreement.

**NN.**  **"Released Claims"** means the claims being released described in Paragraph 7 below.

**OO.**  **"Released Parties"** means Defendant and its present and former parent companies, subsidiaries, divisions, concepts, related or affiliated companies, and its shareholders, owners, partners, officers, directors, employees, agents, attorneys, insurers, successors and assigns, and any other individual or entity that could be liable for any Released Claims, and Defense counsel of record in the Action.

**PP.**  **"Response Deadline"** means the deadline for Settlement Class Members to postmark or fax any Requests for Exclusion or Objections to the Settlement Administrator.  The Response Deadline is forty-five (45) calendar days from the date that Class Notice is first mailed by the Settlement Administrator, unless a Class Member's notice is re-mailed.  In such an instance, the Response Deadline shall be (60) days after Class Notice is first mailed by the Settlement Administrator.  The date of the

postmark shall be the exclusive means for determining whether a Request for Exclusion or Objection was submitted by the Response Deadline.

**QQ. "Request for Exclusion"** means a written request to be excluded from the Settlement Class pursuant to Paragraph 9(C) below.

**RR. "Service Award"** means monetary amounts to be paid to Plaintiff of up to TEN THOUSAND DOLLARS AND ZERO CENTS ($10,000.00), which, subject to Court approval, will be paid out of the Gross Settlement Amount.

**SS. "Settlement Administration Costs"** means all costs incurred by the Settlement Administrator in administration of the Settlement, including, but not limited to the distribution of the Class Notice to the Settlement Class, calculating Individual Settlement Shares, Individual Settlement Payments, Individual PAGA Payments, and Participating Individual Settlement Shares, as well as associated taxes and withholdings, providing declarations, generating Individual Settlement Payment checks and related tax reporting forms, doing administrative work related to unclaimed checks, transmitting payment to Class Counsel for the Court-approved amounts for attorneys' fees and reimbursement of litigation costs and expenses, to Plaintiff for her Service Award, and to the LWDA for the LWDA Payment, providing weekly reports of opt-outs, objections and related information, and any other actions of the Settlement Administrator as set forth in this Agreement, all pursuant to the terms of this Agreement. The Settlement Administration Costs are estimated not to exceed ELEVEN THOUSAND FIVE HUNDRED DOLLARS AND ZERO CENTS ($11,500.00). If the actual amount of the Settlement Administration Costs is less than $11,500.00, the difference between $11,500.00 and the actual Settlement Administration Costs shall be a part of the Net Settlement Amount. If the Settlement Administration Costs exceed $11,500.00 then such excess will be paid solely from the Gross Settlement Amount and Defendant will not be responsible for paying any additional funds in order to pay these additional costs.

**TT.** **"Settlement Administrator"** means the Third-Party Administrator mutually agreed upon by the Parties and approved by the Court that will be responsible for the administration of the Settlement including, without limitation, the distribution of the Individual Settlement Payments to be made by Defendant from the Gross Settlement Amount and related matters under this Agreement.

**UU.** **"Workweeks"** means the number of weeks that a Settlement Class Member was directly employed by and worked for the Defendant as a non-exempt employee during the Class Period in California, based on hire dates, re-hire dates (as applicable), and termination dates (as applicable). All Class Members will be deemed to have worked at least one Workweek during the Class Period, and all PAGA Members will be deemed to have worked at least one Workweek during the PAGA Period.

## 2. BACKGROUND

**A.** On February 7, 2021, Plaintiff filed with the LWDA and mailed Defendant a notice under Labor Code section 2699.3 stating Plaintiff intended to serve as a proxy of the LWDA to recover civil penalties on behalf of PAGA Members for various alleged Labor Code violations ("PAGA Notice").

**B.** On April 27, 2022, Plaintiff filed a putative wage-and-hour Complaint in United States District Court for the Northern District of California captioned *Steven Miller v. Red Robin International, Inc.*, Case No. 22-CV-02574-JCS alleging causes of action against Defendant for (1) failure to pay overtime wages; (2) failure to provide meal and rest periods; (3) failure to pay earned wages upon discharge; (4) failure to provide accurate wage statements; (5) unlawful, unfair, and/or deceptive business practices; and (6) civil penalties under PAGA. As part of the terms and conditions of this Settlement, Plaintiff has agreed to amend his Complaint to add a seventh cause for alleged unreimbursed business expenditures or losses under California Labor Code § 2802.

**C.** Shortly thereafter, the Parties agreed to attend an early mediation. In preparation and anticipation of mediation, the Parties engaged in formal and informal

discovery, in which Plaintiff was provided with, among other things, Plaintiff's personnel file and payroll records, the scope of the Class that had and did not have signed arbitration agreements with Defendant, anonymized payroll records and dates of employment of the Class Members, all wage and hour policies relevant to the Class Members in effect during the Class Period, the settlement agreement and Plaintiff's endorsed settlement check in *Bautista*, and relevant data points. Plaintiff also produced documents and responses to Defendant's formal discovery requests, including, among other things, documents in support of the allegations in his Complaint, non-privileged witness or declaration statements concerning allegations in the Complaint, and documents that support his claims for alleged exempt misclassification and failure to provide meal and rest periods. The Parties also engaged in two rounds of notices sent to a sampling of the Class Members pursuant to *Belaire-West Landscaping, Inc. v. Sup. Ct.*, 149 Cal.App.4th 554 (2007) and the Court's orders.

**D.** On May 22, 2023, the Parties participated in a full-day mediation before Todd A. Smith, Esq., a well-regarded mediator experienced in mediating complex labor and employment matters. With the aid of the mediator's evaluation, the Parties reached the Settlement to resolve the Action via a mediator's proposal, which acknowledged the Parties' agreement that the estimated workweeks associated with the class claims in the Action are 20,324 and the estimated pay periods associated with the PAGA claims in the action are 3,482.

**E.** Class Counsel has conducted significant investigation of the law and facts relating to the claims asserted in the Class Action, and the PAGA Notice, and have concluded that that the Settlement set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class, taking into account the sharply contested issues involved, the expense and time necessary to litigate the Action through trial and any appeals, the risks and costs of further litigation of the Action, the risk of an adverse outcome, the uncertainties of complex litigation, the information learned through

formal and informal discovery regarding Plaintiff's allegations, and the substantial benefits to be received by Settlement Class Members.

**F.**    Defendant has concluded that, because of the substantial expense of defending against the Action, the length of time necessary to resolve the issues presented herein, the inconvenience involved, and the concomitant disruption to its business operations, it is in its best interest to accept the terms of this Agreement. Defendant denies each of the allegations and claims asserted against it in the Action and the PAGA Notice.  However, Defendant nevertheless desires to settle the Action for the purpose of avoiding the burden, expense and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Action.

**G.**    This Agreement is intended to and does effectuate the full, final, and complete resolution of all Class Released Claims of Plaintiff and Participating Class Members, and all PAGA Released Claims of Plaintiffs and, to the extent permitted by law, of the State of California and PAGA Members.

**3.    <u>JURISDICTION</u>**

The Court has jurisdiction over the Parties and the subject matter of the Action. The Action includes claims that, if proven, would authorize the Court to grant relief pursuant to the applicable statutes.  After the Court has granted Final Order Approving Settlement and entered judgment, the Court shall retain jurisdiction over the Parties to enforce the terms of the judgment pursuant to the Local Rules of the Northern District of California, as applicable.

**4.    <u>STIPULATION OF CLASS CERTIFICATION</u>**

The Parties stipulate to the certification of the Settlement Class under this Agreement for purposes of settlement only.

**5.    <u>MOTIONS FOR APPROVAL OF SETTLEMENT</u>**

**A. <u>Motion for Preliminary Approval</u>**

Plaintiff shall promptly submit this Stipulation of Settlement to the United States District Court for the Northern District of California in support of Plaintiff's Motion

for Preliminary Approval and determination by the Court as to its fairness, adequacy, and reasonableness. Plaintiff agrees to provide Defendant the opportunity to review, and to approve before filing, Plaintiff's Motion for Preliminary Approval. At the hearing on the Motion for Preliminary Approval, the Parties will appear and support the granting of the motion. At the hearing on the Motion for Preliminary Approval, the Parties will appear and support the granting of the motion. Should the Court decline to preliminarily approve material aspects of the Settlement (including but not limited to the scope of release to be granted by Class Members or by PAGA Members, or the binding effect of the Settlement on Class Members or PAGA Members), the Parties shall work together in good faith to address any concerns raised by the Court and propose a revised Settlement for the Court's approval. Promptly upon execution of this Stipulation of Settlement, Plaintiff shall apply to the Court for the entry of an order preliminarily approving the Settlement in a form that is mutually agreeable between the Parties and also provides for the following: (1) Scheduling a fairness hearing on the question of whether the proposed Settlement, including payment of attorneys' fees and litigation costs, costs of administration and the Class Representative's Service Award should be finally approved as fair, reasonable and adequate as to the members of the Settlement Class; (2) Certifying a Settlement Class, Plaintiff Steven Miller as Class Representative, and Rebecca Peterson-Fisher, Jennifer L. Liu, and Leah Kennedy of KATZ BANKS KUMIN LLP as Class Counsel; (3) Approving as to form and content the proposed Class Notice; (4) Approving the manner and method for Class Members to request exclusion from the Settlement as contained herein and within the Class Notice; (5) Directing the mailing of the Class Notice by first class mail to the Class Members; and (6) Preliminarily approving the Settlement, subject only to the objections of Class Members and final review by the Court and approval of the settlement of PAGA Released Claims.

### B. <u>Motion for Final Approval</u>

Class Counsel agree to return or destroy all confidential documents provided by Defendant; e.g., lists, and data in all forms and formats (originals and copies), including but not limited to documents Defendant informally produced to Class Counsel in anticipation of mediation (e.g., relevant data points) within sixty (60) days after the Effective Date.  Prior to filing, Plaintiff agrees to provide Defendant the opportunity to review Plaintiff's Motion for Final Approval, and Plaintiff shall make a good faith effort to incorporate and/or address Defendant's edits and comments.  At the hearing on the Motion for Final Approval, the Parties will appear and support the granting of the motion.  Should the Court decline to finally approve material aspects of the Settlement (including but not limited to the scope of release to be granted by Class Members or by PAGA Members, or the binding effect of the Settlement on Class Members or PAGA Members), the Parties shall work together in good faith to address any concerns raised by the Court and propose a revised Settlement for the Court's approval.  However, an award by the Court of a lesser amount than that sought by Plaintiff and Class Counsel for the Service Award and the Class Counsel's Court-approved attorneys' fees and litigation costs will not constitute a material modification to the Settlement within the meaning of this paragraph. Class Counsel agrees to submit a proposed final order and judgment, in a form that is mutually agreeable between the parties and also provides for the following: (1) Approving the Settlement, adjudging the terms of the Settlement to be fair, reasonable and adequate, and directing consummation of the Settlement's terms and provisions; (2) Approving Class Counsel's application for an award of attorneys' fees and litigation costs; (3) Approving the Service Award to Plaintiff; (4) Approving payment of Settlement administration costs to the Settlement Administrator; and (5) Entering judgment in accordance with the Federal Rules of Civil Procedure, and permanently barring and enjoining all members of the Settlement Class and the PAGA Members from prosecuting against

Defendant and the Released Parties any Class Released Claims and PAGA Released Claims.

**6.    NO ADMISSION**

In entering into this Agreement, Defendant does not admit, and specifically denies, that it violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to its employees. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, will be construed as an admission or concession by Defendant of any such violations or failures to comply with any applicable law.

**7.    RELEASE OF CLAIMS**

**A. Release by All Participating Class Members**

Upon the date Defendant transfers the Gross Settlement Amount, Plaintiff and Participating Class Members release the Released Parties from any and all claims alleged or that could have been alleged in Plaintiff's Operative Complaint based on the facts alleged, which arose during the Class Period, including but not limited to (1) all claims failure to pay overtime wages; (2) all claims for failure to provide meal and rest periods; (3) all claims for failure to pay earned wages upon discharge; (4) all claims for failure to provide accurate wage statements; (5) all claims for unlawful, unfair, and/or deceptive business practices California Business & Professions Code section 17200, *et seq.* arising out of the Labor Code violations referenced in the Operative Complaint; and (6) all claims for failure to reimburse necessary business expenditures or losses under California Labor Code § 2802 (the "Class Released Claims").

**B. Release by All PAGA Members**

Upon the date of funding the Gross Settlement Amount, the State of California and PAGA Members release the Released Parties from all claims exhausted in

Plaintiff's notice(s) sent to the LWDA and alleged in the Operative Complaint and/or based on the Class Released Claims, which arose during the PAGA Period, regardless of whether PAGA Members opt out of the Class Settlement, including claims for PAGA penalties pursuant to Labor Code sections 210, 226.3, 256, 558, 1174.5, 1197.1, and 2699 in connection with alleged violations of Labor Code sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 558, 1174, 1194, 1197, 1197.1, 1198, 2802, 2699 ("PAGA Released Claims").  The Class Released Claims and PAGA Released Claims shall be referred to herein as the "Released Claims".

### C. **Claims Not Released**

The releases above expressly exclude all other claims, including claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers' compensation, and any other claims outside of the Class Released Claims of Participating Class Members arising during the Class Period and the PAGA Released Claims of PAGA Members (and, to the extent permitted by law, the State of California) arising outside of the PAGA Period.

### D. **Plaintiff's General Release of All Known and Unknown Claims**

Upon the date of funding of the Gross Settlement Amount, in addition to the claims being released by all Participating Class Members, the named Plaintiff will release and forever discharge the Released Parties, to the fullest extent permitted by law, of and from any and all claims, known and unknown, asserted and not asserted, which the Named Plaintiff has or may have against the Released Parties as of the date of execution of this Agreement ("Named Plaintiff's Released Claims").  The Named Plaintiff's Released Claims include, but are not limited to, all of the Released Claims, the PAGA Released Claims and any other claims arising under the California Labor Code; any claim arising out of the California common law of contract; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and federal common law; all claims for lost wages and benefits, emotional distress, retaliation, punitive damages, and attorneys' fees and costs arising under federal, state, or local laws for discrimination, harassment, and wrongful

termination, including but not limited to, 42 U.S.C. section 1981, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the California Fair Employment and Housing Act, the California Labor Code, and the law of contract and tort. This release excludes the release of claims not permitted by law. Likewise, Defendant will release the Named Plaintiff to the fullest extent permitted by law from any and all claims, known and unknown, asserted and not asserted, which Defendant has or may have against the Named Plaintiff as of the date of execution of this Agreement ("Defendant's Released Claims").

The Named Plaintiff's Released Claims and Defendant's Released Claims include all claims, whether known or unknown. Even if the Named Plaintiff or Defendant discovers facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Named Plaintiff's Released Claims or Defendant's Released Claims, those claims will remain released and forever barred. To effect a full and complete general release as described above, the Named Plaintiff and Defendant expressly waive any and all rights and benefits conferred upon him by the provisions of Section 1542 of the California Civil Code or similar provisions of applicable law which are as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Thus, notwithstanding the provisions of section 1542, and to implement a full and complete release and discharge of the Named Plaintiff and Released Parties, the Named Plaintiff and Defendant expressly acknowledge this Agreement is intended to include in

its effect, without limitation, all claims the Named Plaintiff or the Defendant does not know or suspect to exist in the Named Plaintiff's or Defendant's favor at the time of signing this Agreement, and that this Agreement contemplates the extinguishment of any such claims. The Named Plaintiff and Defendant warrant that they have read this Settlement, including this waiver of California Civil Code section 1542, and that they have consulted with or had the opportunity to consult with counsel of their choosing about this Agreement and specifically about the waiver of section 1542, and that they understand this Agreement and the section 1542 waiver, and so they freely and knowingly enter into this Agreement.  The Named Plaintiff and Defendant further acknowledge that the Named Plaintiff or Defendant later may discover facts different from or in addition to those the Named Plaintiff or Defendant now know or believe to be true regarding the matters released or described in this Agreement, and even so the Named Plaintiff agree that the releases and agreements contained in this Agreement shall remain effective in all respects notwithstanding any later discovery of any different or additional facts. The Named Plaintiff and Defendant expressly assume any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies released or described in this Agreement or with regard to any facts now unknown to the Named Plaintiff or Defendant relating thereto.

## 8.    <u>SETTLEMENT ADMINISTRATOR</u>

Plaintiff and Defendant, through their respective counsel, have selected Rust Consulting to administer the Settlement, which includes but is not limited to, distributing and responding to inquiries about the Class Notice and calculating all amounts to be paid from the Gross Settlement Amount.  Charges and expenses of the Settlement Administrator, currently estimated to be ELEVEN  THOUSAND FIVE HUNDRED DOLLARS AND ZERO CENTS ($11,500.00) will be paid from the Gross Settlement Amount.  If the actual amount of the Settlement Administration Costs is less than $11,500.00, the difference between $11,500.00 and the actual Settlement Administration Costs shall be a part of the Net Settlement Amount. If the Settlement

Administration Costs exceed $11,500.00, then such excess will be paid solely from the Gross Settlement Amount and Defendant will not be responsible for paying any additional funds in order to pay these additional costs.

9. **NOTICE, WORKWEEK DISPUTE, OBJECTION, AND EXCLUSION PROCESS**

A. **Notice to the Settlement Class Members**

Within ten (10) business days after the Preliminary Approval Date, Defense Counsel shall provide the Settlement Administrator with the Class List. The Settlement Administrator shall perform an address search using the United States Postal Service National Change of Address ("NCOA") database and update the addresses contained on the Class List with the newly-found addresses, if any. Within ten (10) business days of receiving the Class List from Defendant, or as soon thereafter as is practicable, the Settlement Administrator shall mail the Class Notice to the Settlement Class Members via first-class regular U.S. Mail using the most current mailing address information available and email the Class Notice to the Settlement Class Members using the last-known email address provided by Defendant, if any. The Settlement Administrator shall also send a text message to the Settlement Class Members using the last-known telephone number provided by Defendant, which shall alert them that the Class Notice has been mailed and emailed to them. The Settlement Administrator shall maintain the Class List and digital copies of all the Settlement Administrator's records evidencing the giving of notice to any Settlement Class Member, for at least four (4) years from the Effective Date.

The Class Notice will set forth the following:

(1)     the Settlement Class Member's estimated Individual Settlement Payment and Individual PAGA Payment, and the basis for each;

(2)     the information required by Rule 23 of the Federal Rules of Civil Procedure;

(3)     the material terms of the Settlement;

(4)     the proposed Settlement Administration Costs;

(5)     the definition of the Settlement Class;

(6)     a statement that the Court has preliminarily approved the Settlement;

(7)     how the Settlement Class Member can obtain additional information, including contact information for Class Counsel;

(8)     information regarding opt-out and objection procedures;

(9)     the date and location of the Final Fairness and Approval Hearing; and

(10)    that the Settlement Class Member must notify the Settlement Administrator no later than the deadline specified if the Settlement Class Member disputes the accuracy of the number of Workweeks as set forth on his or her Class Notice ("Workweek Dispute").  If a Settlement Class Member fails to timely dispute the number of Workweeks attributed to him or her in conformity with the instructions in the Class Notice, then he or she shall be deemed to have waived any objection to its accuracy and any claim to any additional settlement payment based on different data.

If a Class Notice from the initial notice mailing is returned as undeliverable within 45 days of the initial notice mailing, the Settlement Administrator will attempt to obtain a current address for the Settlement Class Member to whom the returned Class Notice had been mailed, within five (5) calendar days of receipt of the returned Class Notice, by: (1) contacting the Settlement Class Member by phone, if possible, and (2) undertaking skip tracing.  If the Settlement Administrator is successful in obtaining a new address within 45 days of the initial notice mailing, it will promptly re-mail the Class Notice to the Settlement Class Member.  Further, any Class Notices that are returned to the Settlement Administrator with a forwarding address before the Response Deadline shall be promptly re-mailed to the forwarding address affixed thereto.

No later than seven (7) calendar days from the Response Deadline, the Settlement Administrator shall provide counsel for the Parties with a declaration attesting to the completion of the notice process, including the number of attempts to obtain valid mailing addresses for and re-sending of any returned Class Notices, as well as the identities, number of, and copies of all Requests for Exclusion and Objections received by the Settlement Administrator.

### B. Objections

Only Participating Class Members may object to the Settlement.  PAGA Members shall have no right to object to the PAGA Released Claims or any portion of the Settlement pertaining to the PAGA Released Claims.  To object, Participating Class Members shall file a written objection with the Clerk of the United States District Court for the Northern District of California. Participating Class Members who timely file written objections may, but are not required to, appear at the Final Approval Hearing, either in person or through an attorney.  Objections may be made at the hearing on the Motion for Final Approval without a written objection being submitted only with the Court's express permission.  All written objections must state the Participating Class Member's full name, address, and the dates they worked as an employee for the Defendant.  Any written objection should state each specific reason in support of the objection, and state whether it applies only to the objector, to a specific subset of the class, or to the entirety of the class.  Written objections and supporting papers must (a) clearly identify the case name and number (*Steven Miller v. Red Robin International, Inc.*, Case No. 22-CV-02574-JCS), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Clerk of the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco CA 94102, and (c) be filed or postmarked on or before the deadline set by the Court.

1     ## C. **Requesting Exclusion**

2         Any Settlement Class Member may request exclusion from (*i.e.*, "opt out" of)

3     the Settlement by mailing a written request to be excluded from the Settlement

4     ("Request for Exclusion") to the Settlement Administrator, postmarked on or before the

5     Response Deadline.  To be valid, a Request for Exclusion must be timely submitted and

6     also include: (1) the Class Member's name; (2) the Class Member's Social Security

7     Number; (3) the Class Member's signature; and (4) the following statement: "Please

8     exclude me from the Settlement Class in the *Steven Miller v. Red Robin International,*

9     *Inc.* matter" or any statement of similar meaning standing for the proposition that the

10    Class Member does not wish to participate in the Settlement.   The Settlement

11    Administrator shall immediately provide copies of all Requests for Exclusion to Class

12    Counsel and Defense Counsel and shall report the Requests for Exclusions that it

13    receives, to the Court, in its declaration to be provided in advance of the Final Fairness

14    and Approval Hearing.  Any Settlement Class Member who requests exclusion using

15    this procedure will not be entitled to receive any payment from the Settlement and will

16    not be bound by the Settlement Agreement or have any right to object to, appeal, or

17    comment on the Settlement.  Any Settlement Class Member who does not opt out of

18    the Settlement by submitting a timely and valid Request for Exclusion will be bound

19    by all terms of the Settlement, including those pertaining to the Class Released Claims,

20    as well as any Judgment that may be entered by the Court if Final Order Approving

21    Settlement is granted.  A Settlement Class Member cannot submit both a Request for

22    Exclusion and an objection.  If a Settlement Class Member submits an Objection and a

23    Request for Exclusion, the Request for Exclusion will control and the Objection will be

24    overruled. Settlement Class Members who worked during the PAGA Period that submit

25    a valid Request for Exclusion will still be deemed PAGA Members, will still receive

26    their Individual PAGA Payments, and will be bound by the release of the PAGA

27    Released Claims.

28

1    **D. <u>Disputes Regarding Settlement Class Members' Workweek Data</u>**

2    Each Settlement Class Member may dispute the number of Workweeks

3    attributed to him or her on his or her Class Notice ("Workweek Dispute"). Any such

4    disputes must be mailed to the Settlement Administrator by the Settlement Class

5    Member, postmarked on or before the date set by the Court. The Settlement

6    Administrator shall immediately provide copies of all disputes to Class Counsel and

7    counsel for Defendant and shall immediately attempt to resolve all such disputes

8    directly with the relevant Settlement Class Member(s) with the assistance of Defendant

9    and Class Counsel. If the dispute cannot be resolved in this manner, the Court shall

10   adjudicate the dispute. All such disputes must be resolved by the date set by the Court,

11   and in no event less than fifteen (15) days before the applicable Response Deadline for

12   each Class Member who submits a Workweek Dispute unless otherwise ordered by the

13   Court.

14   **10.   <u>INDIVIDUAL SETTLEMENT PAYMENTS AND INDIVIDUAL PAGA</u>**

15   **<u>PAYMENTS</u>**

16   Individual Settlement Payments will be calculated and distributed to

17   Participating Class Members from the Net Settlement Amount on a pro rata basis,

18   based on the Participating Class Members' respective number of Workweeks during

19   the Class Period. Individual PAGA Payments to PAGA Members will be calculated

20   and distributed to PAGA Members from the PAGA Payment on a pro rata basis based

21   on PAGA Members' respective number of Workweeks during the PAGA Period.

22   Specific calculations of the Individual Settlement Shares and Individual PAGA

23   Payments to PAGA Members will be made as follows:

24   **A.**   The Settlement Administrator will determine the total number of

25   Workweeks worked by each Settlement Class Member during the Class Period

26   ("Class Member's Workweeks"), as well as the aggregate number of Workweeks

27   worked by all Settlement Class Members during the Class Period ("Class

28   Workweeks"). Additionally, the Settlement Administrator will determine the total

number of Workweeks worked by each PAGA Member during the PAGA Period ("PAGA Member's Workweeks"), as well as the aggregate number of Workweeks worked by all PAGA Members during the PAGA Period ("PAGA Workweeks").

    **B.**    To determine each Participating Class Member's Participating Individual Settlement Share, the Settlement Administrator will determine the aggregate number of Workweeks worked by all Participating Class Members during the Class Period ("Participating Class Workweeks") and use the following formula: Individual Settlement Share = (Participating Class Member's Workweeks ÷ Participating Class Workweeks) × Net Settlement Amount.

    **C.**    The net amount of the Participating Individual Settlement Share is to be paid out to Participating Class Members by way of check and is referred to as "Individual Settlement Payment(s)".

    **D.**    To determine each PAGA Member's Individual PAGA Payment, the Settlement Administrator will use the following formula: PAGA Member's Individual PAGA Payment = (PAGA Member's Workweeks ÷ PAGA Workweeks) x $100,000.00 (the PAGA Payment).

    **E.**    Individual Settlement Payments and Individual PAGA Payments shall be paid to Participating Class Members and/or PAGA Members by way of check. When a Participating Class Member is also an PAGA Member, one check may be issued that aggregates both the Individual Settlement Payment and the Individual PAGA Payment.

**11.**    **DISTRIBUTION OF PAYMENTS**

    **A. Distribution of Individual Settlement Payments**

    Participating Class Members will receive an Individual Settlement Payment and PAGA Members will receive an Individual PAGA Payment. Individual Settlement Payment and Individual PAGA Payment checks shall remain valid and negotiable for one-hundred and eighty (180) calendar days after the date of their issuance. Within fourteen (14) calendar days after expiration of the 180-day period, the Settlement

Administrator shall cancel checks for such payments and shall cause funds associated with such checks to be tendered, or initiate the process for tendering, to the California State Controller's Office's Unclaimed Property Division in the name of the Participating Class Member to whom the check was payable.  In the event a Participating Class Member fails to cash/deposit his or her Individual Settlement Payment, the Participating Class Member shall nevertheless remain bound by the Settlement.

**B. Funding of Settlement**

Defendant shall, within ten (10) calendar days of the Effective Date, make payment of the Gross Settlement Amount and Employer Taxes to the Settlement Administrator pursuant to Internal Revenue Code section 1.468B-1 for deposit in an interest-bearing qualified settlement account ("QSA") with an FDIC insured banking institution, for distribution in accordance with this Agreement and the Court's Orders and subject to the conditions described herein.

**C. Time for Distribution**

Within ten (10) calendar days after payment of the full Gross Settlement Amount and Employer Taxes by Defendant, or as soon thereafter as practicable, the Settlement Administrator shall distribute Payments from the QSA for: (1) the Service Award to Plaintiff as specified in this Agreement and approved by the Court; (2) the Attorneys' Fees and Cost Award to be paid to Class Counsel, as specified in this Agreement and approved by the Court; (3) the Settlement Administrator Costs, as specified in this Agreement and approved the Court; (4) the LWDA Payment, as specified in this Agreement and approved by the Court; and (5) Individual PAGA Payments as specified in this Agreement and approved by the Court.  The balance remaining shall constitute the Net Settlement Amount from which Individual Settlement Payments shall be made to Participating Class Members, less applicable taxes and withholdings.  All interest accrued shall be for the benefit of the Class Members and distributed on a pro rata basis to Participating Class Members based on the number of Workweeks worked by them

in the Class Period.

**D. <u>Tax Liability and Circular 230 Disclaimer</u>**

Defendant makes no representation as to the tax treatment or legal effect of the payments called for hereunder, and the Named Plaintiff and Participating Class Members are not relying on any statement, representation, or calculation by Defendant or by the Settlement Administrator in this regard.  Participating Class Members and Class Counsel understand and agree that they shall be responsible for the payment of all taxes and penalties assessed on the payments specified herein, and shall hold the Parties, Class Counsel and Defense Counsel free and harmless from and against any claims resulting from treatment of such payments as non-taxable, including the treatment of such payments as not subject to withholding or deduction for payroll and employment taxes.

EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT

1 ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY
2 ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX
3 PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY;
4 AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED
5 ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH
6 ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF
7 WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE
8 BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX
9 STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION
10 CONTEMPLATED BY THIS AGREEMENT.

11 **12.    ATTORNEYS' FEES AND LITIGATION COSTS**

12      Class Counsel shall apply for, and Defendant shall not oppose, an award of
13 attorneys' fees of up to 25% of the Gross Settlement Amount, which amounts to EIGHT
14 HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($800,000.00). Class
15 Counsel shall further apply for, and Defendant shall not oppose, an application or
16 motion by Class Counsel for reimbursement of actual costs associated with Class
17 Counsel's prosecution of this matter as set forth by declaration testimony in an amount
18 up to TWENTY-FIVE THOUSAND DOLLARS AND ZERO CENTS ($25,000.00).
19 Awards of attorneys' fees and costs shall be paid out of the Gross Settlement Amount,
20 for all past and future attorneys' fees and costs necessary to prosecute, settle, and obtain
21 Final Order Approving Settlement in the Action.  The "future" aspect of the amounts
22 stated herein includes, without limitation, all time and expenses expended by Class
23 Counsel (including any appeals therein).  There will be no additional charge of any kind
24 to either the Settlement Class Members or request for additional consideration from
25 Defendant for such work. Should the Court approve attorneys' fees and/or litigation
26 costs and expenses in amounts that are less than the amounts provided for herein, then
27 the unapproved portion(s) shall be a part of the Net Settlement Amount.

28

Class Counsel shall be solely and legally responsible to pay all applicable taxes on the award of attorneys' fees. Class Counsel shall provide the Settlement Administrator with properly completed and signed copies of IRS Form W-9 in order for the Settlement Administrator to process such fees approved by the Court. The Settlement Administrator shall issue an IRS Form 1099 to Class Counsel for the Class Counsel Award.

## 13.   <u>SERVICE AWARD TO PLAINTIFF</u>

Plaintiff shall seek, and Defendant shall not oppose, a Service Award in an amount not to exceed TEN THOUSAND DOLLARS and ZERO CENTS ($10,000.00) to Plaintiff, for participation in and assistance with the Action. Any Service Award awarded to Plaintiff shall be paid from the Gross Settlement Amount and shall be reported on an IRS Form 1099. If the Court approves the Service Award to Plaintiff in less than the amounts sought herein, then the unapproved portion(s) shall be a part of the Net Settlement Amount.

The Named Plaintiff will be solely and legally responsible to pay any and all applicable taxes on the Service Award and shall hold harmless Defendant, Class Counsel and Defense Counsel from any claim or liability for taxes, penalties, or interest arising as a result of payment of the Service Award. Any amount requested by the Named Plaintiff for the Service Award and not awarded by the Court shall become part of the Net Settlement Amount and shall be distributed to Participating Class Members as part of their Individual Settlement Payment.

## 14.   <u>TAXATION AND ALLOCATION</u>

Each Individual Settlement Share shall be allocated as follows: 34% as alleged unpaid wages (to be reported on an IRS Form W-2); 33% as alleged interest (to be reported on an IRS Form 1099); and 33% alleged civil and statutory penalties (to be reported on an IRS Form 1099). Each Individual PAGA Payment shall be allocated entirely as penalties. The Parties agree that the employees' share of taxes and withholdings with respect to the wage-portion of the Individual Settlement Share will

be withheld from the Individual Settlement Share in order to yield the Individual Settlement Payment. The amount of federal income tax withholding will be based upon a flat withholding rate for supplemental wage payments in accordance with Treasury Regulation § 31.3402(g)-1(a)(2) as amended or supplemented.  Income tax withholding will also be made pursuant to applicable state and/or local withholding codes or regulations.

All monies received by Participating Class Members under the Settlement which are attributable to wages shall constitute income to such Participating Class Members solely in the year in which such monies actually are received by the Participating Class Members.  It is the intent of the Parties that Individual Settlement Payments provided for in this Agreement are the sole payments to be made by Defendant to Participating Class Members in connection with this Settlement, with the exception of the Named Plaintiff, and that the Participating Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Individual Settlement Payments.  Furthermore, the receipt of Individual Settlement Payments by Participating Class Members shall not, and does not, by itself establish any general, special, or joint employment relationship between and among the Participating Class Member(s) and Defendant.

Forms W-2 and/or Forms 1099 will be distributed by the Settlement Administrator at times and in the manner required by the Internal Revenue Code of 1986 (the "Code") and consistent with this Agreement.  If the Code, the regulations promulgated thereunder, or other applicable tax law, is changed after the date of this Agreement, the processes set forth in this Section may be modified in a manner to bring Defendant into compliance with any such changes.

All Employer Taxes will be paid by Defendant separate, apart, and in addition to the Gross Settlement Amount.

Neither Counsel for Plaintiff nor Defendant intend anything contained in this Agreement to constitute advice regarding taxes or taxability, nor shall anything in this

Agreement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 C.F.R. Part 10, as amended) or otherwise.

## 15.    PRIVATE ATTORNEYS' GENERAL ACT ALLOCATION

The Parties agree to allocate ONE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($100,000.00) of the Gross Settlement Amount toward PAGA penalties. Pursuant to the PAGA, seventy-five percent (75%) of the amount allocated toward PAGA ($75,000.00) will be paid to the LWDA and twenty-five percent (25%) ($25,000.00) will be distributed to PAGA Members on a pro rata basis based upon their respective Workweeks worked as PAGA Members during the PAGA Period.

## 16.    COURT APPROVAL

This Agreement is contingent upon an order by the Court granting Final Order Approving Settlement, and that the LWDA does not intervene and object to the Settlement.  In the event it becomes impossible to secure approval of the Settlement by the Court and the LWDA, the Parties shall be restored to their respective positions in the Action prior to entry of this Settlement. If this Settlement Agreement is voided, not approved by the Court or approval is reversed on appeal, it shall have no force or effect and no Party shall be bound by its terms except to the extent: (a) the Court reserves any authority to issue any appropriate orders when denying approval; and/or (b) there are any terms and conditions in this Settlement Agreement specifically stated to survive the Settlement Agreement being voided or not approved, and which control in such an event.

## 17.    WITHDRAWAL FROM SETTLEMENT BASED ON REQUESTS FOR EXCLUSION

Defendant shall retain the option to nullify the Agreement in the event that more than 10% of Class Members submit timely and valid Requests for Exclusion. Defendant must provide written notice to Class Counsel of their withdrawal within thirty (30) calendar days of receiving sufficient information to determine that the opt out rate exceeds 10%.

18. **NOTICE OF JUDGMENT**

In addition to any duties set out herein, the Settlement Administrator shall provide notice of the Final Judgment entered in the Action by posting the same on its website for a period of no less than four (4) years.

19. **LIMITATIONS ON USE OF THIS SETTLEMENT**

A. **Non-Evidentiary Use**

Whether or not the Effective Date occurs, neither this Agreement, nor any of its terms, nor the Settlement itself, will be: (a) construed as, offered, or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant or any other of the Released Parties, including but not limited to, evidence of a presumption, concession, indication, or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession, or damage, or (b) disclosed, referred to, or offered in evidence against any of the Released Parties in any further proceeding in the Action, except for the purposes of effectuating the Settlement pursuant to this Agreement or for Defendant to establish that a Class Member has resolved any of his or her claims released through this Agreement.

B. **Nullification**

The Parties have agreed to the certification of the Class encompassing all claims alleged in the Action for the sole purpose of effectuating this Agreement. If (a) the Court should for any reason fail to certify this Class for settlement, or (b) the Court should for any reason fail to approve this Settlement, or (c) the Court should for any reason fail to enter the Final Order, or (d) the Final Order is reversed, or declared or rendered void, or (e) the Court should for any reason fail to dispose of the Action in its entirety, then (i) this Agreement shall be considered null and void; (ii) neither this Agreement nor any of the related negotiations or proceedings shall be of any force or effect; (iii) all Parties to this Agreement shall stand in the same position, without prejudice, as if the Agreement had been neither entered into nor filed with the Court; (iv) the fact that the Parties were willing to stipulate to class certification of all causes

of action pled in the Action as part of the Settlement will have no bearing on, and will not be admissible in connection with, the issue of whether the Class should be certified by the Court in a non-settlement context in this Action or any other action, and in any of those events, Defendant expressly reserves the right to oppose certification of the Class; and (v) the First Amended Complaint in the Action shall be null and void and of no force or effect, and the Complaint filed in the Action shall thereafter become the operative complaint.

Additionally, should the Settlement not become final for any reason, any Settlement Administration Costs already incurred by the Settlement Administrator shall be split evenly amongst the Parties. If Defendant elect to revoke the Settlement, as specified in Paragraph 17, the Parties and any monies required to be paid under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Settlement, and the Parties shall proceed in all respects as if this Settlement had not been executed, except that any Settlement Administration Costs already incurred by the Settlement Administrator shall be paid to the Settlement Administrator by Defendant.

In the event of a timely appeal from the Final Order, the Final Order shall be stayed and the Gross Settlement Amount shall not be distributed pending the completion of the appeal.

## 20.    **MISCELLANEOUS PROVISIONS**

### A. **Interpretation of the Agreement**

This Agreement constitutes the entire agreement between the Parties with respect to its subject matter.  Except as expressly provided herein, this Agreement has not been executed in reliance upon any other written or oral representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict its terms.  In entering into this Agreement, the Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.  The Agreement will be interpreted and enforced under the laws of the State

of California, both in its procedural and substantive aspects, without regard to its conflict of law provisions.  Any claim arising out of or relating to the Agreement, or the subject matter hereof, will be resolved solely and exclusively in the United States District Court for the Northern District of California, and Plaintiff and Defendant hereby consent to the personal jurisdiction of the Court in the Action over it solely in connection therewith.  The foregoing is only limited to disputes concerning this Agreement.  The Parties, and each of them, participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel.  As such, neither Plaintiff nor Defendant may claim that any ambiguity in this Agreement should be construed against the other.  The Agreement may be modified only by a writing signed by counsel for the Parties and approved by the Court.

## B. **Further Cooperation**

The Parties and their respective attorneys shall proceed diligently to prepare and execute all documents, to seek the necessary approvals from the Court, and to do all things reasonably necessary to consummate the Settlement as expeditiously as possible. The Parties agree that they will not take any action inconsistent with this Agreement, including, without limitation, encouraging Class Members to opt out of the Settlement. In the event the Court finds that any Party has taken actions inconsistent with the Settlement, including, without limitation, encouraging Class Members to opt out of the Settlement, the Court may take any corrective actions, including enjoining any Party from communicating regarding the Settlement on an ex parte basis, issuing (a) corrective notice(s), awarding monetary, issue, evidentiary and/or terminating sanctions against that Party, and/or enforcing this Agreement despite the presence of opt-outs and/or objections.

## C. **Counterparts**

The Agreement may be executed in one or more actual or non-original counterparts, all of which will be considered one and the same instrument and all of which will be considered duplicate originals.

1    **D. <u>Authority</u>**

2    Each individual signing below warrants that he or she has the authority to execute

3    this Agreement on behalf of the Party for whom or which that individual signs.

4    **E. <u>No Third-Party Beneficiaries</u>**

5    Plaintiff, Participating Class Members, PAGA Members, the State of California,

6    Class Counsel, and Defendant are direct beneficiaries of this Agreement, but there are

7    no third-party beneficiaries.

8    **F. <u>Deadlines Falling on Weekends or Holidays</u>**

9    To the extent that any deadline set forth in this Agreement falls on a Saturday,

10   Sunday, or legal holiday, that deadline shall be continued until the following business

11   day.

12   **G. <u>No Public Comment</u>**

13   The Parties and their counsel agree that they will not issue any press releases,

14   initiate any contact with the press, respond to any press inquiry, or have any

15   communication with the press about the fact, amount or terms of the Agreement.

16   Further, Class Counsel will not include, reference or use Defendant's name in any

17   marketing or promotional materials, including but not limited to marketing or

18   promotional efforts directed at current or former Red Robin employees, at any time

19   after the execution of this Agreement.  Nothing herein will restrict Class Counsel from

20   including publicly available information regarding this settlement in future judicial

21   submissions regarding Class Counsel's qualifications and experience, and nothing

22   herein will restrict Class Counsel from advising or representing current or former Red

23   Robin employees at any time.  It is acknowledged and agreed that this clause does not

24   prohibit Class Counsel from posting information regarding this matter and its resolution

25   on Class Counsel's professional websites and professional social media accounts,

26   provided that such postings do not refer to Red Robin by name or other identifying

27   characteristics, including but not limited to that the Defendant is a national restaurant

28

chain, the generic job titles of the class members, the class size, the nature of the claims, and the settlement amount.

### H. Duty to Support and Defend the Settlement

The Parties agree to abide by all of the terms of this Agreement in good faith and to support the Settlement fully and to use their best efforts to defend this Settlement from any legal challenge, whether by appeal or collateral attack.

### I. Jurisdiction of the Court

The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Settlement Agreement and all orders and judgments entered in connection therewith.

### J. Severability

In the event that one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall in no way effect any other provision if Defense Counsel and Class Counsel, on behalf of the Parties and the Settlement Class, mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.

* * *

Signatures on next page.

1  **IT IS SO AGREED:**

2  <u>**Plaintiff and Class Representative**</u>

3

4  Dated: _____2/16/2024_____    DocuSigned by

5  STEVEN MILLER

6  <u>**Defendant**</u>

7

8  Dated: _____    _____

9  RED ROBIN INTERNATIONAL, INC.

10

11  By: _____

12  <u>**APPROVED AS TO FORM:**</u>

13

14  Dated: February 16, 2024         KATZ BANKS KUMIN LLP

15

16                    By: _____

17                        Rebecca Peterson-Fisher
                          Jennifer J. Liu
18                        Leah Kennedy

19                        Attorneys for Plaintiff STEVEN
                          MILLER and the Proposed Class

20
   Dated: February   , 2024          JACKSON LEWIS P.C.
21

22
                      By: _____
23                        Adam Y. Siegel
                          Martin P. Vigodnier
24
                          Attorneys for Defendant
25                        RED ROBIN INTERNATIONAL,
                          INC.
26

27  4865-9910-4164, v. 1

28

35

1  **IT IS SO AGREED:**

2  **Plaintiff and Class Representative**

3

4  Dated: _____        _____

5                                 STEVEN MILLER

6  **Defendant**

7
   Dated: **02/16/2024**          _Am 9 6 ½_
8                                 Sarah Mussetter (Feb 16, 2024 12:17 MST)
                                  RED ROBIN INTERNATIONAL, INC.
9

10                               By: **Sarah Mussetter**

11

12 **APPROVED AS TO FORM:**

13

14 Dated: February    , 2024              KATZ BANKS KUMIN LLP

15

16                               By:  _____
17                                    Rebecca Peterson-Fisher
                                     Jennifer J. Liu
18                                   Leah Kennedy

19                                   Attorneys for Plaintiff STEVEN
                                     MILLER and the Proposed Class
20

21 Dated: February    , 2024              JACKSON LEWIS P.C.

22
                                 By:  _Adam Y. Siegel_
23                                    Adam Y. Siegel (Feb 16, 2024 11:1/ PST)
24                                   Adam Y. Siegel
                                     Martin P. Vigodnier
25
                                     Attorneys for Defendant
26                                   RED ROBIN INTERNATIONAL,
                                     INC.
27 4865-9910-4164, v. 1

28

                                    35
       STIPULATION REGARDING CLASS ACTION AND PAGA SETTLEMENT

# EXHIBIT B

## NOTICE OF CLASS ACTION SETTLEMENT
## IMPORTANT LEGAL NOTICE

*Steven Miller v. Red Robin International, Inc.*

United States District Court, Northern District of California, Case No. 22-cv-02574-JCS

### THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT MAY AFFECT YOU.

*A court authorized this notice.  This is not a solicitation.*

**TO:** EMPLOYEES WHO WERE EMPLOYED BY RED ROBIN INTERNATIONAL, INC. IN THE STATE OF CALIFORNIA AS ASSISTANT GENERAL MANAGERS ("AGM"), KITCHEN MANAGERS ("KM"), OR ASSISTANT MANAGERS ("AM") (COLLECTIVELY, "SALARIED MANAGERS") DURING THE CLASS PERIOD (APRIL 27, 2018 THROUGH THE DATE THE COURT PRELIMINARILY APPROVES THE SETTLEMENT AGREEMENT OR SEPTEMBER 30, 2023, WHICHEVER IS EARLIER).

The United States District Court, Northern District of California, has granted preliminary approval of the proposed settlement ("Settlement") of the above-captioned action.  Because your rights may be affected by this Settlement, it is important that you read this Notice of Class Action Settlement ("Notice") carefully.  The purpose of this Notice is to provide a brief description of the claims alleged in the Class Action, the key terms of the proposed Settlement, and your rights and options with respect to the Settlement.

### AN ESTIMATE OF YOUR SHARE OF THE SETTLEMENT CAN BE FOUND IN SECTION 7.

To receive your share, you do not have to file a claim or take any other action.  You must take action only if you have an address change, want to object to the Settlement, or want to opt out from the Settlement.

### YOU MAY BE ENTITLED TO MONEY UNDER THIS PROPOSED SETTLEMENT.

### PLEASE READ THIS NOTICE CAREFULLY; IT EXPLAINS YOUR LEGAL RIGHTS.

### 1. Why Did I Receive This Notice?

A proposed settlement has been reached in a lawsuit involving Red Robin International, Inc. ("Defendant" or "Red Robin") that may affect your rights.

The records of the Defendant indicate that you worked at one or more of their California locations and you are a member of one or more of the following groups:

(A) "Class Members" are all employees who are currently or have been employed by Defendant in the State of California for workweeks during which those individuals work or worked as Assistant General Managers ("AGM"), Kitchen Managers ("KM"), or Assistant Managers ("AM") (collectively, "Salaried Managers") at any time during the Class Period (April 27, 2018 through the date the court preliminarily approves the settlement agreement or September 30, 2023, whichever is earlier), excluding any Salaried Manager who signed an arbitration agreement with Defendant.  The following workweeks shall be excluded: (1) any workweeks any Salaried Managers who did not opt out of the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case No. STK-CV-UOE-2018-0002270, Superior Court of the state of California, San Joaquin County and worked as KMs during the period between April 27, 2018 and February 17, 2019; and (2) any workweeks any Salaried Manager who consented to join a prior settlement in *Outlaw v. Red Robin International, Inc.*, Case No. 2:18-cv-04357, United States District Court for the Eastern District of New York worked during the period between April 27, 2018 and March 31, 2020.

(B)        "PAGA Members" are all employees who are currently or have been employed by Defendant in the State of California for workweeks during which those individuals work or worked as Salaried Managers at any time from February 7, 2021 through the date the Court preliminarily approves the Settlement Agreement or September 30, 2023, whichever is earlier. PAGA Members shall include employees who signed an arbitration agreement with Defendant.

This means you are a potential Class and/or PAGA Member, and you have a right to know about the Settlement. The Settlement will resolve all Class Members' Released Claims, as described below, from April 27, 2018 through the date the court preliminarily approves the settlement agreement or September 30, 2023, whichever is earlier ("Class Period"), and will resolve all PAGA Members' Released Claims, as described below, from February 7, 2021 through the date the Court preliminarily approves the Settlement Agreement or September 30, 2023, whichever is earlier ("PAGA Period").

The Preliminary Approval Hearing was held on January 26, 2024. The Northern District of California conditionally certified the Class for settlement purposes only and directed that you receive this Notice. The Court will hold a Final Approval Hearing concerning the proposed settlement on [DATE] at [TIME]. You may attend the hearing via Zoom at:

https://cand-uscourts.zoomgov.com/j/1619260804?pwd=RE5qWDhGOTdWWTZUOFlOKzhNc3pjZz09
Webinar ID: 161 926 0804
Password: 050855

The date of the Final Approval Hearing may change without further notice to you and other Class Members. If you plan to attend the hearing, you should check the settlement website or review the Court's docket on the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov to check if the date has changed. You may also obtain additional information regarding the Settlement and review important documents relating to this case by visiting the settlement website: [website]. Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award will be filed by _____.

## 2. What Is the Lawsuit About?

On April 27, 2022, Plaintiff Steven Miller ("Plaintiff") filed a Class Action Complaint against Defendant Red Robin International, Inc. Plaintiff brought this Class Action lawsuit on his behalf and other similarly situated employees in California.

In the lawsuit, Plaintiff claimed that Defendant violated the law by misclassifying Class Members as exempt employees, and: (1) failure to pay overtime wages; (2) California meal and rest period violations; (3) waiting time penalties; (4) failure to provide accurate wage statements; and (5) unlawful, unfair, and/or deceptive business practices. Plaintiff sought unpaid wages, interest, and penalties, injunctive relief, as well as attorneys' fees and costs for himself and Class Members. The lawsuit also includes a claim for civil penalties under the California Private Attorneys General Act of 2004, California Labor Code §§ 2698 et seq. ("PAGA"). As part of the terms and conditions of the Settlement, Plaintiff has agreed to amend his Complaint to add a seventh cause for alleged unreimbursed business expenditures or losses under California Labor Code § 2802.

The Court has not made any decision about the claims or allegations in this lawsuit. By issuing this Notice, the Court is not suggesting that one side would win or lose if this case went to trial. Defendant vigorously denies any liability whatsoever, denies all of the factual and legal allegations, and contends that it fully complied with all applicable laws at all times. Plaintiff and Defendant have agreed to settle the case as a negotiated compromise.

### 3. What Is a Class Action?

A class action is a legal proceeding where one or more persons sue not just for themselves, but also for other people who have similar claims (forming a "class" or a group of people).

### 4. Background of Settlement

Plaintiff's lawyers ("Class Counsel") have conducted a thorough investigation of the facts in this case, as well as a detailed assessment of Defendant's records. Class Counsel then reached a settlement with Defendant after negotiations with the assistance of a neutral mediator.

Plaintiff and the attorneys for both sides believe the settlement is fair, reasonable, and adequate, and in the best interests of the Class and PAGA Members considering the uncertain outcome, risks, costs, and time involved in further litigation, trial, and possible appeals.

### 5. What Are the Monetary Terms of the Proposed Settlement?

Defendant has agreed to pay $3,200,000.00 (the "Gross Settlement Fund") to settle this case. This money will be used to pay: (1) the reasonable fees and expenses of the Settlement Administrator to oversee the settlement administration currently estimated at $11,500; (2) a $100,000 settlement under the California Private Attorneys General Act of 2004, California Labor Code §§ 2698 et seq. ("PAGA"), inclusive of a $75,000 payment to the California Labor and Workforce Development Agency ("LWDA"), and a $25,000 payment ("PAGA Fund") to all PAGA Members; (3) a $10,000 service payment to the Plaintiff to compensate him for his services to the Class in bringing and litigating this lawsuit and for a general release of all of his claims against Defendant ("Service Award"); and (4) $800,000 in attorneys' fees and up to $25,000 in costs to compensate Class Counsel for their services to the Class. The remainder of the Gross Settlement Fund after paying these standard costs is the Net Settlement Amount that will be distributed to Class Members who do not opt out of the settlement ("Participating Class Members").

### 6. How Will My Settlement Payment Be Determined?

Participating Class Members' and PAGA Members' payments will be distributed as follows: The Net Settlement Fund will be distributed to Settlement Class Members and PAGA Members on a proportionate distribution based on each Settlement Class Member's and PAGA Member's weeks worked during the Class Period and the PAGA Period, respectively, as follows:

- $25,000 shall be allocated for proportionate distribution based on weeks worked by the PAGA Members from February 7, 2021 through the date the Court preliminarily approves the Settlement Agreement or September 30, 2023, whichever is earlier. All PAGA Members will receive a proportional share of the $25,000 PAGA Fund, regardless whether they opt out of the Settlement Class.
- The remaining amount in the Net Settlement Fund shall be allocated for proportionate distribution based on weeks worked among the Settlement Class Members from April 27, 2018 through the date the court preliminarily approves the settlement agreement or September 30, 2023, whichever is earlier.

### 7. How Much Can I Expect to Receive from This Settlement?

Your estimated gross distribution from the Net Settlement Amount and the PAGA penalties ("Settlement Payment") is set forth below and based on the following information from Defendant's records:

**Your Dates of Employment and Work Weeks During the Class Period**:

Your dates of employment during the Class Period are: _____ to _____.

You worked __ weeks between February 7, 2021 through the date the Court preliminarily approves the Settlement Agreement or September 30, 2023 (PAGA Group)

You worked ▮▮ weeks between April 27, 2018 through the date the court preliminarily approves the settlement agreement or September 30, 2023 (Class Members)

[X] workweeks have been excluded because of your participation in one or more of the following class action settlements: the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case No. STK-CV-UOE-2018-0002270, Superior Court of the state of California, San Joaquin County or the settlement in *Outlaw v. Red Robin International, Inc.*, Case No. 2:18-cv-04357, United States District Court for the Eastern District of New York.

**Estimated Share of Net Settlement Amount**:

Based on this information, your estimated share of the Net Settlement Amount is: $▮▮▮▮▮▮.

**YOUR TOTAL ESTIMATED SETTLEMENT PAYMENT BASED ON ▮ WORKWEEKS WORKED DURING THE PAGA PERIOD AND ▮ WORKWEEKS WORKED DURING THE CLASS PERIOD (AS REFERENCED ABOVE), BEFORE TAX DEDUCTIONS AND WITHHOLDINGS, IS: $▮▮▮▮▮▮▮**

**Your actual Settlement Payment may end up being higher or lower than estimated.**

**If you disagree with any of the information above which was used to calculate your Settlement Payment, you may challenge the information by contacting the Settlement Administrator and providing information/documentation to support your challenge. The Settlement Administrator will evaluate the evidence you submit and decide whether your Settlement Payment should be changed.**

For tax purposes, your Settlement Payment shall be allocated between wages and non-wage income as follows: 34% of such consideration shall be allocated to the payment of taxable wages and wage-related payments; 66% of such consideration shall be allocated to the payment of non-wage income consisting of interest on wages, alleged penalties, liquidated damages, and related aspects of the settlement. From the portion which is wages shall be withheld the employee's share of payroll and income taxes and all other applicable deductions or withholdings required by law or expressly authorized by the Class Member. From the portions which are allocated as non-wage income shall be withheld all applicable deductions or withholdings required by law or expressly authorized by the Class Member. To the extent required by law, Class and PAGA Members will receive a Form 1099. Consult your tax advisor with any questions about the tax consequences of your Settlement Payment.

| *8. When Will I Receive My Payment and What Do I Have To Do?* |
|---|

The Court will hold a Final Approval hearing on [▮▮▮▮▮▮] at [TIME], to determine whether to approve the settlement. You may attend the hearing on Zoom at: https://cand-uscourts.zoomgov.com/j/1619260804?pwd=RE5qWDhGOTdWWTZUOFlOKzhNc3pjZz09
Webinar ID: 161 926 0804
Password: 050855

If the Court approves the settlement, there may be appeals after that. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Please be patient. Even if the Court approves the settlement, and there are no appeals, the settlement checks will not be issued until about three months after the date of the fairness hearing at the earliest. The Settlement Agreement contains the exact details of the payment schedule. You may obtain a copy of the Settlement Agreement by following the instructions in Section 15 below.

**You must cash each check within 180 days of issuance**. Checks are void 15 days after the 180-day check cashing deadline. Any amount remaining 180 days after the Final Approval Order and after any correctable errors or omissions are covered will be tendered to the California State Controller's Office's Unclaimed Property Division in the name of the Participating Class Member to whom the check was payable.

| **9. What Are My Legal Rights and Options Under the Settlement?** | |
|---|---|
| **Do Nothing** | If you do nothing, and if the Court grants final approval of the Settlement, you will receive payments under the Settlement. You will also release (give up your rights) on any and all claims you may have that are covered by the Settlement. You do not have to do anything to receive payments. To receive a check, you must ensure that your address is kept up to date. |
| **Challenge the Underlying Data for Your Share** | You may challenge the data used to determine your Settlement Payment if you believe the data is incorrect. If you wish to challenge the data, you must do so in writing, and can mail the Challenge Form enclosed with this Notice to the Settlement Administrator at the address below on or before _____, 2023, along with any supporting documentation. Be sure to include your full name. The Settlement Administrator will attempt to resolve the dispute directly with you, with the assistance of the lawyers for both sides. If the dispute cannot be resolved, the Court will decide the dispute. All such disputes will be resolved no later than _____. |
| **Exclude Yourself or "Opt Out" of the Class Settlement but not the PAGA Settlement** | If you "opt out," you will NOT receive any money from the Settlement and you will NOT release any claims you may have against Defendant. To opt out, you must complete the Exclusion Form included with this Notice and mail it to the Settlement Administrator at the address below on or before _____, 2023. Any request for opt-out postmarked after _____, 2023 will be void unless the Court agrees to review the late request. <br><br> You cannot opt out of the PAGA portion of the proposed Settlement. PAGA Members will receive a payment from the PAGA Fund and must release (give up their rights) to pursue PAGA penalty claims against Defendant based on the facts alleged in the Action during the PAGA Period. |

| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement** | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed class settlement, but not the PAGA settlement. If you are a Participating Class Member, you can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object. |
|---|---|
| | To object, you must file a written objection with the Clerk of the United States District Court for the Northern District of California. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. Objections may be made at the hearing on the Motion for Final Approval without a written objection being submitted only with the Court's express permission. |
| | All written objections must state your full name, address, and the dates you worked as an employee for the Defendant. Any written objection should state each specific reason in support of the objection, and state whether it applies only to the objector, to a specific subset of the class, or to the entirety of the class. Written objections and supporting papers must (a) clearly identify the case name and number (*Steven Miller v. Red Robin International, Inc.*, Case No. 22-CV-02574-JCS), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Clerk of the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco CA 94102, and (c) be filed or postmarked on or before _____. |

## 10. What If I Have Questions?

If you have questions, please contact Class Counsel or the Settlement Administrator.

Class Counsel:

**Rebecca Peterson-Fisher**
**Jennifer Liu**
**C. Leah Kennedy**
**Katz Banks Kumin LLP**
150 California Street, 16th Floor
San Francisco, CA 94111
Telephone: (415) 813-3260
Fax: (415) 813-2495
Email: peterson-fisher@katzbanks.com
Website: https://www.katzbanks.com

Settlement Administrator:

<table>
<tr><td>
***Miller v. Red Robin International, Inc.***
c/o RUST CONSULTING.
[ADDRESS]
Tel. [PHONE]
Fax [FAX]
Email: [EMAIL]
</td></tr>
</table>

DO NOT CONTACT THE COURT OR DEFENDANT'S ATTORNEYS FOR INFORMATION REGARDING THE SETTLEMENT OR THE CLAIM PROCESS.

### 11. Who Is the Settlement Administrator?

The Settlement Administrator is a company hired by the Parties to administer the Settlement. The parties have agreed to use Rust Consulting as the Settlement Administrator.

The Settlement Administrator's duties include calculating settlement payments, processing challenges, objections, and exclusions, making payments to the Class Members, and answering questions you may have.

### 12. How Will the Lawyers and the Representative for the Class Be Paid?

Class Counsel will request Court approval for reimbursement of actual litigation costs up to $25,000 and payment of attorneys' fees of up to no more than 25% of the Gross Settlement Fund. The Court will decide whether or not to award the attorneys' fees requested. The attorneys' fees are for legal services that have been and will be provided to the Classes.

Class Counsel will also ask the Court to approve a Service Award of up to $10,000 for the Plaintiff for the effort, time, and risks he took to bring this case, as well as for his release of all claims against Defendant. If approved, this award would be in addition to the amount Plaintiff receives under the settlement as a Class Member.

### 13. What Is Being Released as Part of the Settlement?

If the Court grants Final Approval of the settlement, the Participating Class Members (those who did not opt out) will fully release Defendant from liability for any and all claims alleged or that could have been alleged in Plaintiff's Operative Complaint based on the facts alleged, which arose during the Class Period, including but not limited to (1) all claims failure to pay overtime wages; (2) all claims for failure to provide meal and rest periods; (3) all claims for failure to pay earned wages upon discharge; (4) all claims for failure to provide accurate wage statements; (5) all claims for unlawful, unfair, and/or deceptive business practices California Business & Professions Code section 17200, *et seq.* arising out of the Labor Code violations referenced in the Operative Complaint; and (6) all claims for failure to reimburse necessary business expenditures or losses under California Labor Code § 2802 (the "Class Released Claims"). Unrelated claims (e.g. workers' compensation, disability, unemployment, wrongful termination, retaliation, and discrimination) are not released. Claims arising from facts and circumstances from before April 27, 2018 or after the court's Preliminary Approval Order are also not released.

PAGA Members who are not Participating Class Members will release only all claims exhausted in Plaintiff's notice(s) sent to the LWDA and alleged in the Operative Complaint and/or based on the Class Released Claims, which arose during the PAGA Period, regardless of whether PAGA Members opt out of the Class Settlement, including claims for PAGA penalties pursuant to Labor Code sections 210, 226.3, 256, 558, 1174.5, 1197.1, and 2699 in connection with alleged violations of Labor Code sections 201, 202, 203, 204, 210, 226, 226.3, 226.7, 510, 512, 558, 1174, 1194, 1197, 1197.1, 1198, 2802, 2699.

### *14. Can I Be Retaliated Against for Participating in the Settlement?*

The law prohibits Defendant from retaliating against employees for exercising their rights under the law.  This means Defendant may not fire, demote, or harass you, classify you as ineligible for rehire, or retaliate against you in any other way because you choose to participate in the Settlement.

### *15. Getting More Information about the Settlement*

This notice summarizes the proposed settlement.  For the precise terms of the settlement, please see the settlement agreement available at _____, by contacting Class Counsel or the Settlement Administrator via the contact information provided in Section 10, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**IMPORTANT:**

**1.  If you move or change your address, send the Settlement Administrator your new address. It is your responsibility to keep a current address on file with the Settlement Administrator to ensure receipt of your Settlement Payment.**

**2.  It is strongly recommended that you keep a copy of any challenge, request for exclusion and/or objection that you submit, and proof of timely mailing, emailing, and/or faxing, until after the Final Approval hearing.**

*Your Contact Information*

The Settlement Administrator is using the following contact information for you. If any of your contact information is inaccurate, please correct that information and return a copy of this form to the Settlement Administrator at the address above.

<<Name>>

_____

<<Address>>

_____

<<City>>, <<State> <Zip>>

_____

(___ ___ ___) ___ ___ ___ -- ___ ___ ___ ___

**Home Telephone Number**

(___ ___ ___) ___ ___ ___ -- ___ ___ ___ ___

**Cellular Phone Number**

_____

**Email**

**Complete this Challenge Form only if you wish to challenge the personal information used to calculate your estimated Settlement Payment, as listed above.**

| *Challenge Form* |
|:---:|

Check the boxes below ONLY if you wish to challenge the personal information used to calculate your estimated Settlement Payment, as listed above.  You do NOT have to submit this form if this information is accurate.  All fields must be completed for your challenge to be accepted.  **Any challenges must be postmarked or sent, if emailed or faxed, by no later than [DATE].**  Challenges postmarked, emailed, or faxed after this date will not be honored.

☐    I wish to challenge the dates of my employment.

I have included a written statement of what I believe to be my correct information regarding the challenge(s) checked above.  I have also included information and/or documents that support my challenge (for example, paystubs or time records).  I understand that, by submitting this challenge, I authorize the Settlement Administrator to review Defendants' records, to provide a copy of this challenge and my supporting documents or information to Class Counsel and Defense Counsel, and to contact me to attempt to resolve my challenge. If my challenge cannot be resolved, I understand the Court will make a final decision regarding my challenge.

If you have checked any of the boxes above, please sign below, print your name, and provide your Class Member ID number (from the address label on the envelope of this mailing).

_____
Signature

Name of Class Member    ____[NAME]_____

Class Member ID Number (from address label):  _____[mail id]_____


Statement of reasons and documents in support of challenge(s) checked above:

_____

_____

_____

_____

_____

**[Please attach documents and use separate page(s) as necessary]**