Rebecca Peterson-Fisher (SBN 255359)
Jennifer Liu (SBN 279370)
C. Leah Kennedy (SBN 346306)
KATZ BANKS KUMIN LLP
150 California Street, 16th Floor
San Francisco, CA 94111
Tel: 415.813.3260
Fax: 415.813.2495
Email: Peterson-Fisher@katzbanks.com
Liu@katzbanks.com
Kennedy@katzbanks.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN MILLER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RED ROBIN INTERNATIONAL, INC. dba RED ROBIN BURGER AND SPIRITS EMPORIUMS, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 22-CV-02574-JCS<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Before the Hon. Joseph C. Spero<br><br>Hearing: August 16, 2024, 9:30 a.m.<br>Location: Videoconference<br>Filed: April 27, 2022 |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................4

II.   FACTUAL AND PROCEDURAL BACKGROUND ..............................4

      A.    Discovery and Investigation .........................................................5

      B.    First Amended Complaint..............................................................6

      C.    Settlement Negotiations.................................................................7

      D.    Preliminary Approval ....................................................................7

III.  SETTLEMENT TERMS, NOTICE, AND CLASS MEMBER RESPONSE ...........8

      A.    Class Size and Average Awards – Explanation of Differences from Estimates in Preliminary Approval Motion ........................8

      B.    Proper and Adequate Notice was Sent to the Class........................9

      C.    The Class Response is Uniformly Positive, With No Objections or Opt-Outs .............................................................9

IV.   ARGUMENT ........................................................................................10

      A.    The Settlement Resulted From Arm's-Length Negotiations. .......11

      B.    All Relevant *Hanlon* Factors Weigh Heavily in Favor of Final Approval of the Settlement. ...................................................11

            1.    The Strength of the Plaintiff's Case ....................................12

            2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation.................................................14

            3.    The Risk of Maintaining Class Action Status Through Trial.............14

            4.    The Amount Offered in Settlement and Comparable Cases..............15

            5.    The Extent of Discovery Completed and Stage of the Proceedings.................................................16

            6.    The Experience and Views of Counsel; Comparable Outcomes........17

            7.    The Presence of a Governmental Participant.........................17

            8.    The Reaction of Class Members to the Proposed Settlement.............17

      C.    Final Class Certification is Warranted.........................................18

i

V.    CONCLUSION..............................................................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ............................................................................................................................... 14

*Chu v. Wells Fargo Invs., LLC*, No. C-05-4526-MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ............................................................................................................................. 16

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................... 16

*Cruz v. Sky Chefs, Inc.*, No. C–12–02705 DMR, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ............................................................................................................................... 16

*Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ............................................................................................................................... 15

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ............................................................................................................................. 11

*Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419 (N.D. Cal. 2011) ........................................ 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) .................................................. 10

*Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795 (2013) ....................................................... 13

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)........................... 10

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015)................................. 15

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ................................................ 10

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir.2009) ............. 12

*Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ......................................................................................................................... 11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir.1998) ................................. 10, 16

*Lusby v. Gamestop Inc.*, 297 F.R.D. 400 (N.D. Cal. 2013) ............................................... 16

*Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942 (9th Cir. 2011) ................................ 12, 15

*Mies v. Sephora U.S.A., Inc.*, 234 Cal. App. 4th 967 (2015) ............................................. 12

*Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015), *aff'd*, 728 F. App'x 671 (9th Cir. 2018) ................................................................ 16

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................................................... 17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................................................................................................ 10, 11

*Patel v. Nike Retail Servs., Inc.*, No. 14-CV-04781-RS, 2016 WL 1241777 (N.D. Cal. Mar. 29, 2016) ..................................................................................................................... 12, 13

*Posephny v. AMN Healthcare Inc.*, No. 18-CV-06284-KAW, 2020 WL 13612298 (N.D. Cal. July 9, 2020) ............................................................................................................ 16

*Smith v. Red Robin International*, No. 14CV01432 JAH-BGS, 2017 WL 1198907 (S.D. Cal., Mar. 31, 2017) ...................................................................................................... 13, 15

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ................................... 10, 11

*Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ......................................................................................................................... 18

**Statutes**

Bus. & Prof. Code § 17200, *et seq.* ..................................................................................... 7

Lab. Code § 1174.5 .............................................................................................................. 7

Lab. Code § 1175 ................................................................................................................. 6

Lab. Code § 1194 ................................................................................................................. 6

Lab. Code § 1198 ................................................................................................................. 6

Lab. Code § 218.5 ................................................................................................................ 6

Lab. Code § 226 ................................................................................................................... 6

iii

Lab. Code § 226.7 .................................................................................................... 6
Lab. Code § 510 ....................................................................................................... 6
Lab. Code § 512 ....................................................................................................... 6
Lab. Code §§ 201-203 .............................................................................................. 6
Labor Code section 2802 .......................................................................................... 7

**Rules**
Federal Rule of Civil Procedure 23(e) ................................................................. 1, 11

**Regulations**
IWC Wage Order No. 7-2001 .................................................................................. 6

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 16, 2024 at 9:30 a.m., or as soon thereafter as the matter may be heard, via Zoom at:

https://cand-uscourts.zoomgov.com/j/1619260804?pwd=RE5qWDhGOTdWWTZUOFlOKzhNc3pjZz09

Webinar ID: 161 926 0804

Password: 050855

Plaintiff STEVEN MILLER, on behalf of himself and others similarly situated as defined herein ("Class Members") and as PAGA representative, will and hereby does move this Court for an order for final approval of the class and PAGA settlement.

The Final Approval Motion seeks entry of the Proposed Order Granting Plaintiffs' Motion for Final Approval of Class Action and PAGA Settlement, filed herewith, which:

- Finds that notice to the Class has been completed in conformance with the Court's February 26, 2024 Order Granting Motion for Preliminary Approval of Class Action and PAGA Settlement, ECF No. 61, and was the best notice practicable under the circumstances;
- Holds that the Class Notice was adequate and satisfied due process requirements;
- Certifies the Class for the purposes of settlement;
- Finds that the Settlement was entered into in good faith pursuant to noncollusive, arm's-length negotiations, and that the Settlement is fair, reasonable, and adequate;
- Grants final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e), declares the Settlement Agreement binding on all Class Members who have not timely opted out, and enjoins Class Members from prosecuting the Released Claims against Defendant and Released Parties, and declares the Settlement Agreement binding on all members of the PAGA Group, and enjoins PAGA Group Members from prosecuting the PAGA Released Claims against Defendant and Released Parties;

- Directs the Parties to effectuate the terms of the Settlement Agreement as set forth in the Settlement Agreement, Exhibit A to the Declaration of Rebecca Peterson-Fisher in Support of Motion for Final Approval of Class Action and PAGA Settlement ("Peterson-Fisher Decl."), filed herewith;

- Directs Red Robin to deposit the Gross Settlement Amount, $3,200,000 within 75 days of the date the Court enters the Final Approval Order, into an interest-bearing escrow account established by the Settlement Administrator, Rust Consulting;

- Directs Rust to distribute the Gross Settlement Amount, plus any interest earned, within ten (10) days after the funding of the settlement or as soon thereafter as is practicable, as follows:

  - $10,000 to Plaintiff Steven Miller;

  - $800,000 to Class Counsel as attorney's fees and $11,848.69 as costs;

  - $75,000 to the California Labor and Workforce Development Agency ("LWDA");

  - the remainder, minus $11,500 for itself as settlement administration fees, to Class Members and PAGA Members pursuant to the formula set forth in Section 10 of the Settlement Agreement;

- Orders that any unclaimed settlement funds after each distribution shall be tendered to the California State Controller's Office's Unclaimed Property Division in the name of the Participating Class Member or PAGA Member to whom the check was payable;

- Orders the Parties to abide by all terms of the Settlement Agreement, as modified by the Court's orders; and

- Enters judgment in this case in accordance with the Settlement Agreement.

As explained more fully in the accompanying Memorandum of Points and Authorities, the proposed settlement meets the standard for final approval and is in the best interests of the Class Members. This motion is based upon this Notice of Motion, the accompanying Memorandum of

Points and Authorities, the declarations of Rebecca Peterson-Fisher and Chris Pikus and accompanying exhibits filed herewith, and oral argument on the motion.

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Steven Miller seeks final approval of a $3,200,000 class action and Private Attorneys General Act ("PAGA") representative action settlement on behalf Assistant Managers, Kitchen Managers, and Assistant General Managers ("Salaried Managers" or "SMs") who worked at Red Robin International, Inc. ("Red Robin") restaurants in California, whom Plaintiff alleges were misclassified as exempt employees.  Red Robin is a national chain of burger restaurants which operates over 50 restaurants in California.  Declaration of Rebecca Peterson-Fisher in Support of Motion for Final Approval of Class Action and PAGA Settlement ("Peterson-Fisher Decl.") ¶ 6.  The settlement includes a class of 218 class members who did not sign arbitration agreements, 124 of whom are also PAGA group members, and 78 PAGA group members who did sign arbitration agreements.  *Id*. at ¶ 5.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that Red Robin misclassified Salaried Managers[1] as exempt and unlawfully denied them overtime pay, meal breaks, and rest breaks in violation of California law.  Defendant denies Plaintiff's allegations and contends that SMs are correctly classified as exempt under the administrative and/or executive exemptions.  Plaintiff Miller filed a PAGA letter with the Labor Workforce Development Agency ("LWDA") on February 7, 2022 on behalf of himself and all aggrieved current and former SMs.  Peterson-Fisher Decl. ¶ 8.  On April 27, 2022, Plaintiff filed the original Complaint in this matter.  *Id.* at ¶ 9; ECF No. 1 (Class Action Complaint). The Complaint defined the proposed Class as "all current and former Assistant Managers, Assistant General Manager, and Kitchen Managers (collectively 'Secondary Managers') employed by Red Robin in California at any time between April 27, 2018 through the final disposition of this action," and asserted six causes of action.  ECF No. 1 at ¶ 24.  At the initial case management conference

---

[1] Referred to as Secondary Managers in the Complaint, and as Salaried Managers in the First Amended Complaint.

on September 9, 2022, the parties agreed to private mediation.  Peterson-Fisher Decl. ¶ 11.  Shortly thereafter, a mediation was scheduled with mediator Todd Smith for May 18, 2023.  *Id.*

### A.  Discovery and Investigation

Between September 2022 and May 2023, Plaintiff conducted both formal and informal discovery.  *Id.* at ¶ 12.  Plaintiff served two sets of requests for production and two sets of interrogatories on Defendant, seeking information and documents pertaining to both the merits of his claims and to class certification.  *Id.*  Defendant produced over 5,000 pages of documents, including job descriptions, handbooks, compensation policies, training documents, reference materials, and memoranda.  *Id.*  Through written discovery, Plaintiff obtained critical documents and Defendant's positions on key issues, including Defendant's policies regarding labor budgeting and the impact of its decisions to eliminate the Busser and Expeditor positions in early 2018.  *Id.*

Two rounds of *BelAire-West* notice were sent: the first on an opt-in basis to 10% of the members of the class as originally pled (inclusive of individuals with arbitration agreements, based on Defendant's original class size estimate), and the second on an opt-out basis to another 10% of the class as originally pled.  Peterson-Fisher Decl. ¶ 13.  Defendant produced detailed payroll data and, if applicable, arbitration agreements, for class members who opted-in in the first round of *BelAire-West* notice or who did not opt-out in the second round of *BelAire-West* notice.  *Id.* Defendant also produced dates of employment and compensation data for each pay period for every class member, the aggregate number of workweeks for class members without arbitration agreements, and the aggregate number of pay periods for class members with and without arbitration agreements employed during the PAGA period.  *Id.*  Class Counsel conducted in-depth interviews with approximately three dozen members of the original proposed class, some of whom had arbitration agreements, and obtained seventeen declarations.  *Id.* at ¶ 14.  Because most interviewees worked at multiple Red Robin locations, Plaintiff obtained detailed information regarding the working conditions for SMs at 54 of Defendant's California restaurants.  *Id*.

During the discovery period, Class Counsel learned of two class action settlements with overlapping class definitions: *Bautista v. Red Robin International, Inc.*, San Joaquin County

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

Superior Court Case NO. STK-cv-UOE-2018-2270 ("*Bautista*") and *Outlaw v. Red Robin International, Inc.*, Eastern District of New York Case No. 2:18-cv-03457-GRB-LGBD. Peterson-Fisher Decl. ¶ 15. The *Bautista* settlement released wage and hour claims for Kitchen Managers employed by Red Robin in California between February 26, 2014 and February 17, 2019. *Id.* For individuals who held multiple job titles during the *Bautista* class period, the settlement released claims only for workweeks during which they worked as Kitchen Managers. *Id.* The *Outlaw* settlement released state and federal wage and hour claims for 543 FLSA opt-in plaintiffs nationwide, including some in California, for the period August 2, 2015 to March 31, 2020. *Id.* at ¶ 16.

## B. First Amended Complaint

The First Amended Complaint ("FAC"), filed December 4, 2023, narrowed the class definition based on Class Counsel's consideration of the enforceability of the arbitration agreements signed by numerous members of the original class and the releases of claims by members of the original class who participated in the *Bautista* and *Outlaw* settlements. *Id.* at ¶ 21; ECF No. 53 (FAC). The FAC defines the Class as:

> All employees who are currently or have been employed by Defendant in the State of California for workweeks during which those individuals work or worked as Assistant General Managers ("AGMs"), Kitchen Managers ("KMs"), or Assistant Managers ("AMs") (collectively, "Salaried Managers") at any time from April 27, 2018 to September 30, 2023, excluding: (1) any workweeks any Salaried Managers who did not opt out of the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case No. STK-CV-UOE-2018-0002270, Superior Court of the state of California, San Joaquin County ("*Bautista*") worked as KMs during the period between April 27, 2018 and February 17, 2019; and (2) any workweeks any Salaried Managers who consented to join a prior settlement in *Outlaw v. Red Robin International, Inc.*, Case No. 2:18-cv-04357, United States District Court for the Eastern District of New York ("*Outlaw*") worked during the period between April 27, 2018 and March 31, 2020; and (3) any Salaried Manager who signed an arbitration agreement with Defendant.

ECF No. 53 ¶ 24.

The FAC alleges seven causes of action: (1) Labor Code sections 510 and 1194 and IWC Wage Order No. 5-2001 (unpaid overtime wages); (2) Labor Code sections 218.5, 226.7, 512 and 1198, and IWC Wage Order No. 5-2001 (failure to provide meal and rest periods); (3) Labor Code sections 201-203 (unpaid earned wages upon discharge); (4) Labor Code sections 226, 1175, and

6

1174.5 (wage statements); (5) Business and Professions Code sections 17200, *et seq.* ("Unfair Competition Law" or "UCL"); (6) Labor Code sections 2698, *et seq.* ("Private Attorneys General Act" or "PAGA"); and (7) Labor Code section 2802 (failure to reimburse business expenses). ECF No. 53.

### C. Settlement Negotiations

On May 22, 2023, the Parties attended a full-day mediation session with Todd Smith, Esq., a well-known mediator with substantial experience in California wage and hour class actions. Peterson-Fisher Decl. ¶ 18. Although the Parties did not reach a settlement on the day of mediation, the Parties continued to discuss settlement and agreed to accept a mediator's proposal to settle the case on or around June 12, 2022. *Id.* Over the following months, the Parties negotiated the remaining terms of settlement, and the Parties executed the Settlement Agreement on October 27, 2023. *Id.* At all times, settlement negotiations were conducted vigorously and on an arm's-length basis. *Id.* A copy of the fully-executed Settlement Agreement was filed with California's Labor and Workforce Development Agency on November 30, 2023, proof of submission of which is attached to the Peterson-Fisher Declaration. *Id.* at ¶ 19, Ex. C (LWDA submission confirmation).

### D. Preliminary Approval

On February 26, 2024, this Court granted preliminary approval of the Settlement Agreement reached by plaintiff Steven Miller and defendant Red Robin and granted provisional certification of a settlement class of current and former Red Robin SMs in California. Peterson-Fisher Decl. ¶ 33; ECF No. 61 (Order Granting Motion for Preliminary Approval of Class Action and PAGA Settlement). Pursuant to the Court's Order, on March 25, 2024, Rust Consulting, the appointed Settlement Administrator, mailed notice of the settlement to the 218 Settlement Class Members on the list provided by Red Robin, 124 of whom are also PAGA Group members, and to 78 PAGA-only members. Declaration of Chris Pikus ("Pikus Decl.") at ¶ 10. The period during which Class Members could opt out or object to the settlement closed on June 21, 2024. *Id.* For Class Members who received re-mailed notices after their initial notices were returned as undeliverable, the

deadline to opt-out or object to the settlement was July 5, 2024. *Id.* at ¶ 16. No Class Members have timely opted out of the settlement, and no objections have been filed. *Id.* at ¶¶ 19-20.

## III.    SETTLEMENT TERMS, NOTICE, AND CLASS MEMBER RESPONSE

The settlement requires Red Robin to pay a total of $3,200,000 to the class ("Gross Settlement Amount"). Peterson-Fisher Decl. ¶ 25, Ex. A (Settlement Agreement) at § 1(Q). Plaintiff seeks $10,000 as a service award, $800,000 in attorney's fees, which constitutes 25% of the common fund, and $11,848.69 in cost reimbursement. *Id.* at ¶¶ 30-32; ECF No. 62 (Motion for Attorneys' Fees, Costs, and Service Award). Additionally, the settlement provides for $75,000 to be paid to the LWDA under the California Private Attorneys General Act ("PAGA"), California Labor Code section 2698 *et seq.*, and for payment to Settlement Administrator Rust Consulting, not to exceed $11,500.00. Peterson-Fisher Decl. ¶¶ 28, 49, Ex. A (Settlement Agreement) at §§ 15, 8. Of the remaining funds, expected to total approximately $2,290,000, $25,000 will be distributed among PAGA Group members and the remainder will be distributed among Class Members. *Id.* at ¶ 25, Ex. A at §§ 1(Z), 10. Estimated shares have been calculated using a formula that takes into account the number of workweeks each Class Member worked during the Class Period and the number of workweeks each PAGA Member worked during the PAGA period. *Id.* at ¶ 25, Ex. A at § 10.

### A. Class Size and Average Awards – Explanation of Differences from Estimates in Preliminary Approval Motion

In his Motion for Preliminary Approval, Plaintiff estimated the class size as 205 SMs who did not sign arbitration agreements ("Class Members"), 110 of whom are included in the PAGA settlement, and 47 SMs who signed arbitration agreements but who are included in the PAGA settlement ("PAGA-only members). Peterson-Fisher Decl. ¶ 34; ECF No. 51 at 1. The final class size is larger than originally estimated because 13 hourly employees who did not sign arbitration agreements were promoted to SM positions between Defendant's production of class size data prior to the May 2023 mediation and the close of the class period. Peterson-Fisher Decl. ¶ 34. The original estimated number of PAGA members was likewise based on Defendant's pre-mediation production, and increased because the class period extended to September 30, 2023. *Id.*

8

In Plaintiff's Motion for Preliminary Approval, Plaintif estimated the average settlement award per class member excluding PAGA payments to be $11,105. Peterson-Fisher Decl. ¶ 35; ECF. 51 at 7. Due to the increase in class size, per the Settlement Administrator, the average net settlement share will be $10,397.48 and the average PAGA share will be $123.76. Peterson-Fisher Decl. ¶ 35; Pikus Decl. ¶ 18.

## B. Proper and Adequate Notice was Sent to the Class

Rust Consulting has provided proper and adequate notice of the settlement to the class, as directed by the Preliminary Approval Order. Peterson-Fisher Decl. ¶ 36; ECF No. 61. Notices were sent via first-class mail to 218 Class Members and 78 PAGA-only members on March 25, 2024. Pikus Decl. ¶ 10. Notices were also emailed on the same date to 201 Class Members and 57 PAGA-only members for whom email addresses were available. *Id.* at ¶ 11. On April 8, 2024, text reminders were sent to 205 Class Members and 54 PAGA-only members for whom cell phone numbers were available. *Id.* at ¶ 12. After mailing notice of the settlement on March 25, 2024, some Class Member notice packets were returned by the post office. *Id* at ¶ 13. Rust Consulting performed a skip trace for any Class Members without forwarding addresses, and then re-mailed notice packets to eleven addresses found through the skip trace or other means. *Id.* Ultimately, six notices remain undeliverable because no current address was ascertainable, four of which were directed to Class Members and two of which were directed to PAGA-only members. *Id.* All six individuals to whom Class Notices were undeliverable by mail were e-mailed the Notice and texted a reminder. *Id.*

## C. The Class Response is Uniformly Positive, With No Objections or Opt-Outs

The response by Class Members to the settlement has been universally positive. During the 45-day opt-out and objection period, there were no objections filed by Class Members, and no Class Members timely opted out of the settlement. Pikus Decl. ¶¶ 19-20. This is an extraordinary participation rate that supports the reasonableness of the settlement.

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## IV.    ARGUMENT

Final approval should be granted where a proposed settlement is fundamentally fair, adequate, and reasonable.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The Ninth Circuit has repeatedly recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in the context of "complex class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." (citation omitted)).  In the Ninth Circuit, the primary factors  considered to evaluate whether a class action settlement should be approved, also known as the *Hanlon* factors, are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Officers for Just.*, 688 F.2d at 625; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998) (citation omitted).  No single factor is dispositive, and the relative importance of each factor depends on the nature of the case.  *Officers for Just.*, 688 F.2d at 625.[2]  "The relative degree of importance to be attached to any particular

---

[2] In addition, "where, as here, a settlement agreement is negotiated prior to formal class certification, consideration of the[] eight [] factors alone is not enough to survive appellate review." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  In these cases, courts must also look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include: (1) where "counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution;" (2) where the "parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) where "the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal quotation marks omitted). None of these signs are present here, where Plaintiffs' Counsel has sought only the 25% benchmark proportion of the Settlement fund as attorney's fees, there is no "clear sailing" agreement, and the settlement is nonreversionary.

factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id*. Different factors may carry more weight in "different factual contexts," and in some cases one factor may be determinative. *Torrisi*, 8 F.3d at 1376 (citation omitted).

When class counsel is experienced and supports the settlement, and the agreement was reached after arm's-length negotiations, courts should give the settlement a presumption of fairness. *See Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *5, *8 (N.D. Cal. July 11, 2014); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

In this case, the settlement is fair, reasonable, and adequate under governing law, and it should receive final approval because it was achieved after arm's-length negotiations, and all the pertinent *Hanlon* factors demonstrate its fairness.

## A. The Settlement Resulted From Arm's-Length Negotiations.

The Parties reached the settlement in this case after conducting targeted, premediation formal and informal discovery, exchanging detailed and lengthy mediation statements, and conducting a day-long mediation with Todd Smith in May 2023. Peterson-Fisher Decl. ¶¶ 12-14, 18. Although the Parties reached a general agreement on the day of the mediation, they continued to negotiate the precise terms of the settlement agreement for nearly two months before the final version was executed. *Id.* at ¶ 18. Given the vigorous discovery and negotiations required to achieve the settlement agreement, it is clear that the settlement is not the result of collusion between the Parties, and is therefore presumptively fair. *See Officers for Just.*, 688 F.2d at 625, 627.

## B. All Relevant *Hanlon* Factors Weigh Heavily in Favor of Final Approval of the Settlement.

All *Hanlon* factors that are relevant to this case strongly support a finding that the settlement is fair, reasonable, and adequate. Plaintiff's case, while strong, had several significant procedural and substantive hurdles that made the outcome at trial and on appeal uncertain. Further litigation would have been risky and costly, and would have likely taken years to conclude. Rule 23 certification was not at all certain, and there was a risk that Plaintiff would not have succeeded on

11

the merits even if he obtained class certification.  Plaintiff's counsel believes that the settlement amount is an excellent result for the class.  Significant written discovery was exchanged.  Finally, there were no objections to the settlement submitted by Class Members during the objection period.

### 1. The Strength of the Plaintiff's Case

Although Class Counsel believe Plaintiff has a strong case, they recognize the risks involved in continuing litigation, including the risks of class certification being denied, losing on the merits of their claims, and proving damages.  Peterson-Fisher Decl. ¶ 45.  While employers have the burden of proving that an exemption applies, the plaintiff in a class action misclassification case must demonstrate that liability can be determined based on common proof.  *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 948 (9th Cir. 2011).  Plaintiff can demonstrate centralized control and common policies with regard to labor budgeting, opening and closing tasks, documentation policies, and food preparation and storage policies.  Peterson-Fisher Decl. ¶ 45.  But the existence of centralized control and uniform policies and procedures "does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." *Marlo*, 639 F.3d at 948 (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir.2009)).  A class action plaintiff must further demonstrate that those uniform policies and procedures constrained how class members spent their time, such that there is common proof that over 50% of employees' time was spent on nonexempt activities.  *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 423 (N.D. Cal. 2011).  Where there is significant variation between locations with regard to employees' day-to-day activities based on store needs, courts have found that the apportionment of time between exempt and nonexempt tasks depends on individualized inquiry and have denied class certification.  *E.g.*, *Mies v. Sephora U.S.A., Inc.*, 234 Cal. App. 4th 967, 982-84 (2015).  The same is true when employees exercise different levels of discretion depending on particularities of their store environments and general managers.  *Patel v. Nike Retail Servs., Inc.*, No. 14-CV-04781-RS, 2016 WL 1241777, at *9 (N.D. Cal. Mar. 29, 2016) (denying class certification where testimony established differing levels of discretionary decision-making across locations depending on Head Coach management styles).  For those reasons, "it is well established

1   [that] . . . Labor Code exemptions often 'militate against certification' because they typically

2   require an individualized, fact-intensive inquiry." *Id.* at *7 (citation omitted).

3       Plaintiff contends his class members' declarations establish that SMs performed common

4   tasks across stores, including filling in for hourly employees due to alleged chronic understaffing.

5   Peterson-Fisher Decl. ¶ 45.    However, Defendant will argue that individualized inquiries

6   predominate in this case not only because SMs spend different amounts of time on various duties

7   according to store needs, but also because identical tasks can be exempt or nonexempt depending

8   on the purpose for which they are performed.  *Id.*  Thus, Defendant could argue that even as to

9   tasks that are also performed by nonexempt employees, individualized inquiry as to *why* SMs

10  performed those tasks at any given time will be required.  *Id.*; *Heyen v. Safeway Inc.*, 216 Cal. App.

11  4th 795, 826 (2013) ("If a task is performed because it is 'helpful in supervising the employees or

12  contribute[s] to the smooth functioning of the department for which [the supervisors] are

13  responsible' . . . the work is exempt; if not, it is nonexempt." (citation omitted)).  Defendant will

14  undoubtedly contend that not all of its restaurants were understaffed, and that even if they were,

15  the problem of understaffing does not by itself establish what tasks SMs performed or why on any

16  given day.  Peterson-Fisher Decl. ¶ 45.  In *Smith v. Red Robin International*, No. 14CV01432 JAH-

17  BGS, 2017 WL 1198907 (S.D. Cal., Mar. 31, 2017), Defendant successfully defeated a motion for

18  class certification, and it is uncertain whether Plaintiff would be able to differentiate this case

19  enough to obtain a different result.  Peterson-Fisher Decl. ¶ 42, Ex. B.

20      Plaintiff faced a substantial risk of losing on the merits of his claims for the same reasons.

21  *Id.* at ¶ 46.  If Defendant successfully argued that many of the tasks Plaintiff contends constitute

22  nonexempt work in fact required discretion and independent judgment, including scheduling,

23  ordering, and assigning staff during shifts, Plaintiff could end up with no recovery at all for him or

24  the Class.  *Id.*  While Class Counsel believes Plaintiff could have ultimately won on the merits of

25  their claims at trial, they also recognize the significant risk of losing.  *Id.*  And even if Plaintiff

26  prevailed on the merits, he still faced obstacles to proving the extent of damages.  *Id.*  Due to

27  Defendant's practice of classifying SMs as exempt employees, Defendant never tracked the amount

28

of time Plaintiff and Class Members worked each day, and Plaintiff and Class Members were not required to keep their own records of time they spent working each day. *Id.* In order to prove the amount of unpaid overtime owed to Plaintiff and the Class, Plaintiff would likely have needed to rely on survey data and testimonial evidence to establish the extent of damages, and a jury may have refused to place weight on such evidence. *Id.* The risks to Plaintiff of losing class certification, losing on the merits, and/or failing to prove the extent of damages, weigh heavily in favor of final approval. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) ("[A] settlement is in the interests of class members who otherwise may not be entitled to any relief should their claims fail on the merits.").

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The proposed settlement confers a substantial benefit on Class Members, while further litigation would create significant risks and cause additional expense and delay. If the Parties continued to litigate the case, they would need to conduct further document discovery, including substantial discovery of electronically-stored information, and take numerous depositions of Defendant's corporate representatives, Class Members, and other fact witnesses. Peterson-Fisher Decl. ¶ 47. Both Parties would likely need to retain experts to opine on liability and/or damages issues. *Id.* If Plaintiff obtained class certification and survived summary judgment, a fact-intensive trial would still be necessary to determine liability and damages. *Id.* A trial would be lengthy and complex and would consume tremendous time and resources for all Parties and the Court. *Id.* Any judgment would likely be appealed, further extending the litigation. *Id.* Given the risk, expense, complexity, and delay that further litigation of this action would entail, final approval is especially appropriate. *See Bayat*, 2015 WL 1744342, at *4.

### 3. The Risk of Maintaining Class Action Status Through Trial

The fact that Plaintiff has not yet obtained class certification in this case weighs in favor of final approval. As set forth *supra* Section IV(B)(1), Plaintiff faced numerous obstacles to obtaining class certification on his claims. Even if Plaintiff had obtained certification of the Class on all claims, Defendant could have sought, and the Court could have granted, decertification of the Class

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

in whole or in part at any point up through the trial date.  Peterson-Fisher Decl. ¶ 48; *see generally Marlo*, 639 F.3d (affirming decertification of class).  Given the substantial risks Plaintiff faced in obtaining and/or maintaining class certification, this factor weighs in favor of granting final approval.

### 4.  The Amount Offered in Settlement and Comparable Cases

The $3,200,000 settlement amount is an excellent result given not only the risks described *supra* Section IV(B)(1), but in comparison to similar cases.  Peterson-Fisher Decl. ¶ 49.  In *Smith v. Red Robin*, Defendant successfully defeated a motion for class certification of a proposed class of "Intermediate Managers" asserting misclassification.  *Smith*, 2017 WL 1198907.  The settlement in *Bautista v. Red Robin* provided an average estimated payment of $1,900.80 per class member, and the settlement in *Outlaw v. Red Robin* provided an average estimated payment of $5,433 per class member.  Peterson-Fisher Decl. ¶ 49.  This settlement provides an average per-class-member payment of $10,397.48, in addition to $123.76 for PAGA group members, nearly double the awards in *Outlaw* and more than five times the awards in *Bautista.  Id.* at ¶¶ 35, 39

Although Plaintiff's and Class Members' total theoretical maximum recovery is far greater than the $3,200,000 settlement amount, "the tangible, immediate benefits of . . . [s]ettlement outweigh continued litigation and the uncertainty of a trial."  *Ebarle v. Lifelock, Inc*., No. 15-CV-00258-HSG, 2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016)  (internal quotation marks omitted) (citing *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."))  Given the risks of continued litigation, which includes the risk of class certification being denied and losing on the merits of the claims, the $3,200,000 settlement amount is substantial and falls well within the range of possible approval.

The PAGA allocation of 3.1% is appropriate considering the risks of litigation; the potential denial of stacking and subsequent violation penalties; and the court's discretion to reduce an award of PAGA penalties when it would be unjust, arbitrary, and oppressive, or confiscatory to impose

the full amount. *Posephny v. AMN Healthcare Inc.*, No. 18-CV-06284-KAW, 2020 WL 13612298, at *3 (N.D. Cal. July 9, 2020); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); Peterson-Fisher Decl. ¶ 50.  Moreover, the allocation of 3.1% of the common fund to PAGA penalties is well within the range of what courts in this District have approved.[3]

Because the total settlement amount compares favorably to comparable cases and the proportion of the settlement allocated to PAGA penalties falls within the range of possible approval, this factor weighs in favor of final approval.

### 5. The Extent of Discovery Completed and Stage of the Proceedings

Courts examine the extent of discovery completed and the stage of the proceedings with an eye to determining whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.  Class Counsel conducted document discovery as well as in-depth interviews with approximately three dozen members of the original proposed class who worked at 54 different California Red Robin restaurants and obtained seventeen declarations. Peterson-Fisher Decl. ¶ 14.  Moreover, this Court ordered Defendant to provide Plaintiff with the data necessary to successfully evaluate this case and reach a resolution at mediation – the total compensation data and dates of employment for the class as needed to project damages.  ECF No. 23 (Dec. 12, 2022 CMC Minute Order).  In addition, the Court granted Plaintiff's request for a second round of *BelAire* notice to ensure that Plaintiff had access to a sufficient number of class members to assess the merits of the claims and the likelihood of class certification.  ECF No. 27 (Feb. 13, 2023 CMC Minute Order).  Plaintiff had ample information to assess the strength of the

---

[3] *See, e.g.*, *Cotter*, 193 F. Supp. 3d at 1037 (approving settlement with 3.7% of fund allocated to PAGA claims); *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *6, *8-*9 (N.D. Cal. Aug. 4, 2015), *aff'd*, 728 F. App'x 671 (9th Cir. 2018) (approving PAGA allocation equal to 0.5% of $10 million settlement); *Cruz v. Sky Chefs, Inc.*, No. C–12–02705 DMR, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (approving PAGA allocation of 0.57% of $1.75 million settlement); *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 407 n. 5 (N.D. Cal. 2013) (approving PAGA allocation of 0.67% of $750,000 settlement); *Chu v. Wells Fargo Invs., LLC*, No. C-05-4526-MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA allocation of 0.14% of $6.9 million settlement).

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

claims and the risks of continued litigation, and to build a sophisticated damages model which enabled a reasoned assessment of the fairness of the proposed Settlement.  Peterson-Fisher Decl. ¶ 51.  Accordingly, this factor weighs in favor of final approval.

### 6. The Experience and Views of Counsel; Comparable Outcomes

The proposed settlement was reached through vigorous arm's-length negotiation between lawyers with significant experience litigating wage and hour class actions.  Peterson-Fisher Decl. ¶¶ 4, 18, 52.  Based on Class Counsel's experience litigating wage and hour class actions, and their analysis of settlements in other similar cases, Class Counsel believes that the proposed settlement represents an excellent monetary result for the Class, particularly in light of the risks of denial of class certification, continued litigation, and the outcomes in the *Smith*, *Outlaw*, and *Bautista* cases. Peterson-Fisher Decl. ¶ 49.  Accordingly, this factor also supports final approval.

### 7. The Presence of a Governmental Participant

Here, the proposed settlement did not involve the presence of a governmental participant; therefore, this factor is neutral.  Peterson-Fisher Decl. ¶ 53.

### 8. The Reaction of Class Members to the Proposed Settlement

Finally, the reaction of Class Members provides strong support for final approval of the settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  Class Members were notified of the settlement by first-class mail, as well as by email and text message where email addresses and phone numbers were available.  Pikus Decl. ¶¶ 10-12.  The Settlement Administrator performed traces in instances in which notices were returned as undeliverable, and ultimately all Class Member notices but six were delivered.  *Id.* at ¶ 13.  The notices included each Class Member's estimated individual settlement share. *Id.*, Ex. A.

Class Members were provided with forty-five days during which they could object to the settlement or exclude themselves from it. Peterson-Fisher Decl. ¶ 37, Ex. A at § 1(PP).  During that period, Rust Consulting received no opt-out requests or any objections to any aspect of the

settlement, including the overall monetary relief achieved and the amounts set aside for attorney's

fees, costs, and class representative service awards.  Pikus Decl. ¶¶ 19-20.  The period was extended

for Class Members to whom notice was re-mailed, but no objections or opt-outs were received in

the extended period.  *Id*. at ¶¶ 16, 19-20.

Overall, the lack of objections by Class Members and the one-hundred percent participation

rate show a very positive reaction by the class to the settlement, favoring a finding that the

settlement is fair.  *See Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177,

at *17 (C.D. Cal. Nov. 23, 2013) (collecting cases in which opt-out and objection rates below one

percent were found to support an inference that class members supported the settlement).

This factor weighs heavily in favor of final approval.

Because all of the factors (with the exception of Factor 7, which is neutral) indicate that the

settlement is fair, adequate, and reasonable, the Court should grant final approval of the settlement.

## C.  Final Class Certification is Warranted.

The Court has preliminarily certified this case for settlement purposes. ECF No. 61. The

class to be finally certified consists of:

> All employees who are currently or have been employed by Defendant in the
> State of California for workweeks during which those individuals work or
> worked as Assistant General Managers ("AGMs"), Kitchen Managers
> ("KMs"), or Assistant Managers ("AMs") (collectively, "Salaried
> Managers") at any time from April 27, 2018 to September 30, 2023,
> excluding: (1) any workweeks any Salaried Managers who did not opt out of
> the settlement in *Armando Bautista v. Red Robin International, Inc.*, Case
> No. STK-CV-UOE-2018-0002270, Superior Court of the state of California,
> San Joaquin County worked as KMs during the period between April 27,
> 2018 and February 17, 2019; and (2) any workweeks any Salaried Managers
> who consented to join a prior settlement in *Outlaw v. Red Robin
> International, Inc.*, Case No. 2:18-cv-04357, United States District Court for
> the Eastern District of New York worked during the period between April 27,
> 2018 and March 31, 2020; and (3) any Salaried Manager who signed an
> arbitration agreement with Defendant (the "Class" or "Class members").

The final class list consists of 218 Class Members. Peterson-Fisher Decl. ¶ 55. The class is numerous

and shares common questions of law and fact, including that they were all employed under the same

compensation system and subject to the same legal violations. ECF No. 61 at § III; Peterson-Fisher Decl. ¶¶ 42, 45, 55. Plaintiff is a member of the class and has fairly and adequately represented the interests of the class. *Id.* at ¶ 55. Accordingly, the Court should grant final class certification for settlement purposes.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Final Approval of Class Action and PAGA Settlement.

DATED: July 26, 2024                          Respectfully submitted,

                                              KATZ BANKS KUMIN LLP


                                              By: _____
                                                  Rebecca Peterson-Fisher

                                              *Counsel for Plaintiff and the Proposed Class*